**Stanley Werdell, Plaintiff-Appellee, v. Stanley Turzynski, Defendant-Appellant.**

**Gen. No. 53,424.**

First District, Second Division.

August 18, 1970.

Stanley Turzynski, pro se, of Chicago, appellant.

Tuohy and Martin, of Chicago, for appellee.

MR. JUSTICE LEIGHTON delivered the opinion of the court.

This appeal arises from a bitter dispute between the plaintiff, a lawyer, and the defendant, a former client, concerning fees. The cause was heard by a jury that returned a verdict for the plaintiff. After overruling a posttrial motion, the trial court entered judgment on the verdict.

In urging us to reverse, defendant contends that (1), he was not given an opportunity to present his meritorious defense; (2), evidence, misleading to the jury and prejudicial to him, was erroneously admitted; (3), plaintiff's conduct at the trial and that of his counsel while arguing to the jury, were prejudicial, misled the jury and prevented a fair and impartial verdict; (4), the trial judge gave the jury two erroneous instructions; and (5), the verdict of the jury was against the law and the evidence. The facts are before us in a voluminous record.

On May 4, 1961 the defendant, Doctor Stanley Turzynski, agreed to buy from a Doctor Samuel A. Libert his medical practice, a medical center and real estate at 6165 and 6169 Archer Avenue in the City of Chicago. A consideration for the sale was a restrictive covenant, without time limitation, that prohibited Doctor Libert from engaging in the practice of medicine, directly or indirectly, within a radius of 15 miles of the medical center he sold. In April 1963, Doctor Libert announced his return to medical and surgical practice in the same block on which the medical center was situated. Doctor Turzynski filed suit to restrain breach of the covenant. Doctor Libert's defense was that on December 1, 1961, the restrictive covenant was canceled by a document which amended the 1961 sales agreement. Doctor Turzynski countered this defense with the claim that the document was obtained by fraud. The cause was referred to a Master who conducted hearings and filed his report.

143

Plaintiff, Mr. Stanley Werdell, has been a lawyer since 1930. His practice is restricted to chancery, probate and appeals. Ninety-five percent of his cases are referred to him by other members of the bar. On April 17, 1965, on the advice of his lawyer, Doctor Turzynski consulted Mr. Werdell. On April 21, 1965 Doctor Turzynski signed a written agreement to employ Mr. Werdell "as my attorney to prosecute or settle the . . . case: Stanley Turzynski v. Samuel A. Libert, . . . ." According to the document he and Mr. Werdell signed, Doctor Turzynski agreed to pay as a retainer $1500 within five days, an additional $1500 on or before June 9, 1965; "and the following additional amount: (a) the sum of $35 per hour for whatever time he devotes to the above matter. . . ." By the terms of the retainer agreement, Doctor Turzynski consented to pay all court costs, court reporter charges, master's fees, documentary fees and title charges. If there was an appeal, the parties were to enter into a new agreement. The last paragraph provided "[i]t is further understood that the $3,000 above mentioned shall be applied to the amount of time that the said attorney shall devote to this cause."

April 26, 1967 Mr. Werdell filed the suit involved in this appeal. To the complaint, as exhibits, were attached the retainer agreement of April 21, 1965 and a statement to Doctor Turzynski, which acknowledged receipts totaling $6,248 and showed 361 hours and 5 minutes of work devoted by Mr. Werdell to Turzynski v. Libert, at $35 per hour, making the sum of $12,635 for attorney fees. The statement showed disbursements of $48 for costs and $6,200 received and applied to fees. The statement claimed there was due a balance of $6,435. A judgment in this amount was prayed.

Doctor Turzynski appeared by counsel, asked for a jury trial and pleaded to the complaint with a "Separate Affirmative Answer" containing eight paragraphs. In these, Doctor Turzynski alleged he retained Mr. Wer-

144

dell as his attorney on April 21, 1965 "to represent him in the preparation and presentation of Objections to the Master's Report in the case of Turzynski v. Libert, Case No. 63 S 8949, and for no other purpose; . . . [and that] Stanley Werdell orally represented to Stanley Turzynski that the estimated number of hours for this task would not exceed 60." One paragraph of the "affirmative answer" alleged that because Mr. Werdell failed to perform his duties, he was discharged by Doctor Turzynski "for good cause . . . on December 14, 1966." The remainder of the "affirmative answer" contended that as a matter of law, an attorney who is discharged for good cause cannot enforce a written contract for fees "but may maintain such an action only on Quantum Meruit (sic), if at all, and further that the amounts charged by Stanley Werdell are not fair and reasonable and that the total number of hours claimed are unnecessary and not reasonable or justified." Defendant alleged that the sum he paid Mr. Werdell was $6,700; that he was not indebted to the plaintiff in the amount claimed. On the contrary, it was alleged, Mr. Werdell owed Doctor Turzynski a refund in at least the amount of $2,000.

Doctor Turzynski filed a countercomplaint against Mr. Werdell. In it he alleged that from April 21, 1965 to December 14, 1966 he paid Mr. Werdell $6,700 for legal services; that Mr. Werdell had the duty to represent him "with all due and reasonable care and diligence such as is required of an attorney . . ."; that notwithstanding this duty, Mr. Werdell "negligently pursued his client's cause and, in particular, negligently prepared the plaintiff's Objections to the Master's Report, . . . ." Ten subparagraphs alleged the manner by which, according to Doctor Turzynski, Mr. Werdell failed or willfully and negligently did acts which were either opposed by Doctor Turzynski or which were to his detriment in Turzynski v. Libert. The countercomplaint then alleged, in three consecutive paragraphs, that on and after Decem-

145

ber 19, 1966, Mr. Werdell, "willfully and negligently and unethically . . ." injured the cause of his former client, Doctor Turzynski. The concluding paragraphs of the countercomplaint prayed for damages in the sum of $750,000.

In a trial that lasted from May 31 to June 7, 1968, Doctor Turzynski was called and examined as an adverse witness. He was aked whether when he signed the retainer agreement it contained the last paragraph that provided for application of the $3,000 retainer to the amount of time Mr. Werdell devoted to the case. Doctor Turzynski said, "No, was not (sic)." He then added, "he introduced himself as a very qualified lawyer and as a very honest lawyer. I didn't know that I have to deal with a dishonest, corrupt man, and let's state this corrupt and dishonest. I am able to prove this (sic)." Thereafter, over defendant's objections, interspersed in other testimony, plaintiff called five character witnesses: a magistrate, an associate judge, a circuit court judge, a justice of the Appellate Court of Illinois and a justice of the Illinois Supreme Court. The lawyer who referred Doctor Turzynski to Mr. Werdell appeared as plaintiff's occurrence and character witness. Then Mr. Werdell testified to the circumstances under which he was retained by Doctor Turzynski, the way he kept a record of the time he worked on Turzynski v. Libert and the way he discharged his professional responsibility to his client. Mr. Werdell's secretary testified to the way she recorded the time spent by Mr. Werdell in Doctor Turzynski's case and the way she prepared and mailed letters which Mr. Werdell testified were sent to the client. These letters, and other exhibits totaling twenty-four in number, were admitted as plaintiff's evidence. Doctor Turzynski then testified as the only witness for the defense. He described how Mr. Werdell told him the preparation of the objections to the Master's report would not take much time and that the unused portion of the

$3,000 retainer would be returned. Doctor Turzynski was shown the retainer agreement and he told the jury his understanding of its terms. He described his experiences with Mr. Werdell and their disagreements concerning the case.

When he was cross-examined, defendant was asked if he was the same Stanley Turzynski who on July 31, 1967 was found guilty of the offense of filing a false and fraudulent income tax return in violation of Section 7201, Title 26, United States Code. After objection to these questions were overruled, Doctor Turzynski admitted he was the defendant named. A certified copy of the record was admitted in evidence. At the conclusion of Doctor Turzynski's testimony, the cause was argued and the jury instructed. After deliberation, the jury returned a verdict against Doctor Turzynski in the sum of $5,935. He appeals.

██ In this court Doctor Turzynski now represents himself because the lawyers who docketed his appeal, with our leave, have withdrawn from his case. He filed Excerpts of Record and a Brief and Argument for Defendant-Appellant. On a motion made by lawyers for the plaintiff, Mr. Werdell, we struck the Excerpts and Brief because as to form they violated our rules; and as to substance the Brief contained scurrilous attacks on the integrity of the opposing party, the lawyers connected with the case and witnesses who appeared for the plaintiff. Biggs v. Cummins, 16 Ill2d 424, 158 NE2d 58; Skolnick v. Nudelman, 95 Ill App2d 293, 237 NE2d 804. Doctor Turzynski has filed another set of Excerpts and Brief which corrects, in part, some of the faults that led us to sustain plaintiff's motion to strike.

██ Doctor Turzynski's first contention is that he was not given an opportunity to present to the jury what he claims was a meritorious defense. However, we are not told how or in what manner he was denied this opportunity. Other than in the statement of the issues pre-

sented for review, there is no reference to this contention in Doctor Turzynski's Brief. Thus, the issue is not argued. An issue raised in a brief but not argued is waived. Supreme Court Rule 341(e)(7), Ill Rev Stats 1967, c 110A, § 341(e)(7); Rudolph v. Gersten, 100 Ill App2d 253, 241 NE2d 600; Soter v. Christoforacos, 53 Ill App2d 133, 202 NE2d 846; Louis v. Checker Taxi Co., 318 Ill App 71, 47 NE2d 351.

Doctor Turzynski's second contention is that evidence, misleading to the jury and prejudicial to him, was erroneously admitted. In support of this contention, Doctor Turzynski argues that the sworn complaint was given the jury to read during their deliberation. Although Supreme Court Rule 341(e)(7) requires that contentions on appeal shall contain references to the record page, we are not told where the record shows that the jury was given the complaint to read. Burdened as we are by this failure, we have, nonetheless, scoured this 1176 page record, but fail to find that the incident about which complaint is made occurred.

To the contrary, the record discloses that when the cause was argued to the jury, Doctor Turzynski's lawyer told it that during deliberations it would have "a copy of all the pleadings that were filed in this lawsuit." Mr. Werdell's lawyer objected, saying that when it deliberated, the jury was not going to have copies of all the pleadings. He asked the trial judge to inform the jury accordingly. The trial judge then told the jury, "The only thing you will take with you in the jury room will be the instructions and the exhibits." It is clear, therefore, that the record refutes Doctor Turzynski's argument on this point.

Doctor Turzynski's next argument concerning admission of evidence is that plaintiff's exhibits 3 to 7 were erroneously admitted. These exhibits were copies of five letters, dated between March 25 and November 8, 1966 which plaintiff claims were mailed to Doctor Turzynski.

148

Mrs. Loretta Branda, Mr. Werdell's secretary, testified that she typed the original of these letters, addressed them, put on their envelopes the necessary postage and mailed them to Doctor Turzynski. The exhibits were copies she placed in the file. She said that the originals were never returned to Mr. Werdell's office. Prior to trial, and pursuant to rules, plaintiff asked defendant to admit that letters described in the request were mailed to him and received. Doctor Turzynski denied receiving those letters. Plaintiff testified that after these letters were mailed to Doctor Turzynski, he responded by paying fees requested by the letters.

■■ A properly stamped letter, correctly addressed, and deposited in the mail, is presumed to have been received by the addressee in due course of transmission. Keogh v. Peck, 316 Ill 318, 147 NE 266; Ladd v. Cochran & McCluer Co., 274 Ill App 427. If the addressee denies receipt of the letter, the presumption is rebutted and receipt becomes a question to be resolved by the trier of the fact. Winkfield v. American Continental Ins. Co., 110 Ill App2d 156, 249 NE2d 174. Plaintiff's evidence raised the presumption. Doctor Turzynski's denials made receipt of the letters a question of fact which the jury resolved. There was no error in the court's rulings admitting the letters in evidence. Admission of them was necessary to enable the jury to decide the questions presented by the parties.

In addition to the letters, the trial court admitted plaintiff's exhibits 15 to 23. These were abstracts of the pleadings and interrogatories, copies of time sheets kept by the plaintiff, index of abstract prepared by plaintiff and other work products in Turzynski v. Libert. Doctor Turzynski argues that these exhibits were self-serving declarations by Mr. Werdell; and that it was prejudicial error for the trial judge to have allowed him to give the jury lengthy and repeated descriptions of their content.

 A self-serving declaration is a statement, oral or written, or an equivalent act, by or on behalf of a party which if admitted would constitute evidence in his favor. Lord v. Reed, 254 Ill 350, 98 NE 553. The exhibits about which complaint is made were prepared by Mr. Werdell contemporaneous with his claimed discharge of professional responsibilities to Doctor Turzynski. They were not offered to prove the truth of statements they contained. These exhibits were a part of the res gestae. "To be a part of the res gestae, a declaration, whether verbal or written, must affect the act which is the subject of inquiry and explain, illustrate, qualify, limit or characterize it, and must not be narrative of a past transaction." Cooke Co. v. Miller Brewing Co., 316 Ill 46, 51, 146 NE 459. The nine exhibits were documents plaintiff offered to prove that he did the work he alleged in his suit. Mr. Werdell was allowed to explain their content so that the jury could have an intelligent understanding of them. Therefore, we conclude that no prejudicial error was committed by admission in evidence of plaintiff's exhibits 15 to 23.

Doctor Turzynski argues that the trial judge committed prejudicial error in allowing Mr. Werdell to call five members of the judiciary as character witnesses. The gist of the argument is that in a civil case character is an irrelevancy.

 In a civil case the reputation or character of a party is not an issue. McBean v. Fox, et al., 1 Ill App 177; Holtzman v. Hoy, 118 Ill 534, 8 NE 832; Ellwood v. Walter, 103 Ill App 219. However, evidence of good character can be admissible in a civil suit when the reputation of a party is attacked by general evidence of bad character. Golden v. Gartleman, 159 Ill App 338; compare Weeks v. Jones, 200 Ill App 215. Where, for example, in a suit on a life insurance policy, a defense is interposed that in his application the insured made

knowingly false statements with intent to defraud the insurer, evidence that the insured had a good reputation for truth and veracity became admissible. *Woodruff v. Mutual Life Ins. Co. of N. Y.*, 229 Ill App 213. It is a rule of fundamental fairness that evidence otherwise irrelevant or incompetent, if offered by one party in the first instance, may become relevant in rebuttal or to explain evidence offered or injected into the record by the adversary. *Beckner v. Barrett*, Tex Civ App 1935, 81 SW2d 719. This doctrine has been applied in many situations involving questions of character. See *Mutual Life Ins. Co. of New York v. Treadwell*, 79 F2d 487 (CCA 5th 1935); *Findlay v. Pruitt*, 9 Port (Ala) 195 (1839); *Goldsmith, Forcheimer & Co. v. Picard*, 27 Ala 142 (1855); *Brook v. Morriss, Morriss & Boatwright* (Tex Civ App 1948), 212 SW2d 257; *Ferguson v. Simmons* (Mo), 43 SW2d 875 (1931); Annot, 78 ALR 643.

 In this case, Doctor Turzynski was called as an adverse witness under section 60 of the Civil Practice Act, Ill Rev Stats 1967, c 110, § 60. A characteristic of an adverse witness is that his testimony can be rebutted by the party that calls him. Indeed, a party is bound by the testimony of an adverse witness to the extent that it stands uncontradicted. *Murphy v. Vodden*, 109 Ill App2d 141, 248 NE2d 327; *Lukasik v. Hajdas*, 104 Ill App2d 1, 244 NE2d 404. When Doctor Turzynski testified, he gave an unresponsive answer to a question and told the jury that Mr. Werdell, was a dishonest and corrupt man. "I am able to prove this," he said. Later, he said that Mr. Werdell fooled him, that (referring to Mr. Werdell) he did not know he had "to deal with bandits," "He defrauded me," "he is a swindler, . . . a thief, . . . a crook, corrupt and fraudulent; and I challenge him to come right here to deny this." Doctor Turzynski added, "I challenge him, so the jury can see if I am telling the truth or I lie before the jury." Under

151

these circumstances, the trial judge properly allowed plaintiff to rebut defendant's testimony that attacked plaintiff's character.

 Doctor Turzynski's third contention is that plaintiff's conduct at the trial and that of his counsel while arguing to the jury were prejudicial, misled the jury and prevented a fair and impartial verdict. As to the plaintiff himself, Doctor Turzynski does not say what he did that misled the jury. As to plaintiff's counsel, we have read his arguments to the jury. We find that the statements made in summation were proper comments on the evidence. The purpose of closing argument to a jury is to draw together all of the facts and present the theories of the litigants so that the jury may make a proper decision. Burgh v. Crane Const. Co., Inc., 102 Ill App2d 188, 243 NE2d 590. While it is true that counsel should avoid improper comment, they are permitted sufficient leeway within the evidence so as to properly present the litigation theory of the client. Hopwood v. Thomas Hoist Co., 71 Ill App2d 434, 219 NE2d 76. Our reading of the record discloses tempered presentations by both lawyers. The arguments were within the bounds of propriety; and when objections were made, they were the subject of correct rulings by the trial judge. We find no merit in the contention that the conduct of plaintiff or that of his counsel misled the jury and prevented a fair and impartial verdict.

 Doctor Turzynski's fourth contention is that the trial judge gave the jury two erroneous instructions. One, it is claimed, told the jury that Doctor Turzynski agreed to pay the plaintiff $12,635 for legal services. When he attempted to develop this argument, Doctor Turzynski discovered that the record on appeal did not contain this instruction. On June 25, 1969 he filed an affidavit stating that on June 7, 1968 the trial court gave the written instruction he describes. We have examined the record and we find that this did not occur.

The other criticized instruction is Illinois Pattern Jury Instructions, Civil, IPI 3.02. It told the jury that:

> The credibility of a witness may be attacked by introducing evidence that he has been convicted of a crime. Evidence of this kind may be considered by you in connection with all the other facts and cirucmstances in evidence in deciding the weight to be given to the testimony of that witness.

The basis for this instruction was proof by plaintiff, over defendant's objections, that in July 1967 Doctor Turzynski was found guilty of filing false and fraudulent income tax returns, a felony, in violation of federal laws. Doctor Turzynski argues that the trial judge committed reversible error in admitting the evidence of conviction and in giving the jury IPI 3.02. The core of this argument is that only conviction for an infamous crime can be shown to affect the credibility of a witness. A long line of cases, beginning with Lamkin v. Burnett, 7 Ill App 143 and ending with People v. Kirkpatrick, 413 Ill 595, 110 NE2d 519, is cited to buttress this argument. In addition, our attention is called to the list of infamous crimes defined in Ill Rev Stats 1967, c 38, § 124-1 which, defendant points out, does not include conviction for filing false and fraudulent income tax returns under federal law.

██ ██ As an analogy, we observe that determination of what constitutes an infamous crime, insofar as it effects a vacancy in office, is not an exclusive legislative function, but is subject to judicial decision in the light of the common law as it existed when the constitution was adopted in 1870. People ex rel. Keenan v. McGuane, 13 Ill2d 520, 150 NE2d 168; People ex rel. Symonds v. Gualano, 97 Ill App2d 248, 240 NE2d 467. The better opinion is that the nature of the crime, not the punishment, determines whether it is infamous. An infamous crime is an offense implying such a dereliction

of morals that it shows a total disregard of the obligation of an oath. People v. Parr, 42 Hun (NY) 313, 316–17 (1886). Commission of an infamous crime is inconsistent with the principles of honesty and decency. People ex rel. Ward v. Tomek, 54 Ill App2d 197, 203 NE2d 744.

 One of the crimes which was infamous at common law (because its commission displayed dereliction of morals, inconsistency with principles of honesty and decency) was perjury. Indeed, the origin of infamous crimes as a concept of the common law was perjury, one of the crimen falsi. Perkins, Criminal Law 15 (1957); Commonwealth v. Jones, Appellant, 334 Pa 321, 323, 5 A2d 804 (1939). Perjury is an offense which may be committed in making out a false income tax return. Levin v. United States, 5 F2d 598 (CCA 9th 1925), cert den 269 US 562, 46 S Ct 21, 70 L Ed 412. Thus, the crime of filing false and fraudulent income tax returns has as its essence, the elements of a crime that was infamous at common law.

 Under our statutes, Ill Rev Stats 1967, c 38, §§ 124–1, 124–2, perjury is an infamous crime. It has been held that the crime of filing false and fraudulent federal income tax returns is infamous under the laws of this state. People ex rel. Keenan v. McGuane, supra. We are compelled by logic to conclude that for the purpose of affecting the credibility of a witness, conviction of the crime of filing false and fraudulent income tax returns is also infamous. Therefore, the trial judge ruled correctly when he admitted evidence of defendant's conviction.

Doctor Turzynski's fifth but most vigorously argued contention is that the verdict of the jury was contrary to the law and the evidence. Doctor Turzynski argues that when, in a lawyer's suit for fees, a client attacks the employment contract as unconscionable, the lawyer must

154

prove the allegations of his complaint and disprove the client's charge. Further, Doctor Turzynski argues, when a client attacks as unconscionable a contract with his attorney, whether it be for excessiveness of attorney's fees or for any other unfairness, the client is not required to establish fraud or imposition because the burden of proof is on the attorney to prove his complaint and disprove the client's accusations. Upon the attorney's failure to make such proof, equity treats the case as one of constructive fraud.

It is not to be doubted that this was our dicta in Ross v. Wells, 6 Ill App2d 304, 308, 127 NE2d 519, the case cited in support of these arguments. However, there is one thing wrong. These arguments do not apply to this case. Neither in his first answer filed by one lawyer nor in the second amended one filed by a different set of lawyers, did Doctor Turzynski allege that the retainer contract of April 21, 1965 was unconscionable. The "separate affirmative answer" and its eight paragraphs do not allege facts consistent with his present contention. Not even when he testified in his own behalf did Doctor Turzynski claim that the contract between him and Mr. Werdell was unconscionable. Needless to say, Dcotor Turzynski did not present any evidence to support the argument he now makes.

Despite the voluminous record, this was a simple case. Mr. Werdell filed his suit, supported it with copies of documents he said were a retainer agreement and a statement of his services. At trial, he testified and called witnesses in support of his claim that Doctor Turzynski was indebted to him in the sum alleged. Doctor Turzynski, on the other hand, denied he was indebted to Mr. Werdell. Contrary to Mr. Werdell's allegations, Doctor Turzynski contended that his relation with Mr. Werdell was for the limited purpose of filing of objections to a Master's report. In his testimony, Doctor Turzynski de-

155

scribed his relation with Mr. Werdell, told the jury how he understood the agreement and described his claim that Mr. Werdell told him the legal services would not cost more than $3,000. In direct contradiction of Mr. Werdell's claim that he withdrew from the case, Doctor Turzynski testified that he fired him for cause. Thus, the jury had before it Mr. Werdell's claims controverted by Doctor Turzynski. Because of the liberal rulings made by the able trial judge, questions of fact concerning the relation of the parties were presented to the jury. See Sokol v. Mortimer, 81 Ill App2d 55, 225 NE2d 496; Holley v. Knapp, 45 Ill App 372.

To buttress his contentions about these questions, Doctor Turzynski argues that when a lawyer is discharged by his client without cause, he may rescind the contract of employment and recover on a quantum meruit. If the lawyer is discharged because of corrupt and fraudulent conduct, claims Doctor Turzynski, the lawyer is not entitled to any compensation. The first point in this argument is an incorrect statement of the law; the second point has no application to this case.

██ ██ It is true that a lawyer who is corrupt and fraudulent in dealing with his client forfeits the right to be compensated. See Harding v. Helmer, 193 Ill 109, 61 NE 838; and compare Wright v. Clark, 212 Ill App 289. The case before us, however, does not allow application to this doctrine. Other than Doctor Turzynski's own vehement words, there is no evidence in this record to support his claim that Mr. Werdell dealt with him in a corrupt and fraudulent manner.

██ Vehemence is a poor substitute for credence. No matter how much denunciation is exuded, it will not hide Doctor Turzynski's failure to convince the jury that what he said was true. The jury, after hearing both sides, returned a verdict consistent with law and the evidence.

Mindful that Doctor Turzynski is before us pro se, we have carefully examined each claim of error he has urged in this appeal. We find no reason to disturb the judgment. It is affirmed.

Judgment affirmed.

BURKE and LYONS, JJ., concur.