THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES E. LEWIS, Defendant-Appellant.

Third District   No. 76-313

Opinion filed September 6, 1977.—Rehearing denied October 13, 1977.

478

Dennis A. DePorter, of Braud, Warner, Neppl & Westensee, Ltd., of Rock Island, for appellant.

Edward Keefe, State's Attorney, of Rock Island (James E. Hinterlong and Linda M. Vodar, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

After a jury found the defendant, James Lewis, guilty of unlawfully selling heroin in violation of section 3 of the Uniform Narcotic Drug Act (Ill. Rev. Stat. 1969, ch. 38, par. 22—3) the circuit court of Rock Island County sentenced him to a term of from 3 to 15 years imprisonment and imposed a fine of $5,000.

Defendant was originally tried and convicted on September 28, 1971, and sentenced to a term of 15 to 30 years imprisonment. On appeal to this court, the cause was reversed and remanded. (*People v. Lewis*, 12 Ill.

App. 3d 762, 301 N.E.2d 469.) The decision of this court was affirmed by the Illinois Supreme Court. (57 Ill. 2d 232, 311 N.E.2d 685.) A retrial began on February 5, 1976, which resulted in a finding of guilty. It is from the judgment of conviction and sentence imposed on retrial that defendant has perfected this appeal.

On June 3, 1971, Illinois Bureau of Investigation agent Grover Webb and a paid informant, Nancy Wires, went to the Armstrong residence in Rock Island for the purpose of making a controlled narcotics purchase. Webb testified that he handed defendant $100. Webb then observed defendant reach into the blouse of Patricia Armstrong and remove a plastic sack containing several aluminum foil packets. Defendant removed one of the packets and handed it to Webb. The packet was to contain one teaspoon of heroin. Later chemical analysis established that the white power in the packet did contain heroin.

Shortly after the purchase, Webb stated he opened the aluminum foil packet in the presence of three law enforcement officials who observed Webb and special agent Erdman place their initials and the date of June 3, 1971, on a small piece of paper. The foil packet was then closed with the initialed piece of paper inside. The packet was then sealed into an evidence envelope. At trial, an aluminum foil packet was introduced into evidence after Webb had identified it as similar to the one purchased from defendant on June 3, 1971. The packet was then opened and an initialed piece of paper withdrawn from inside the packet. Both Webb and Erdman identified the initialed paper as the one they had placed in the packet on June 3, 1971, and the paper was then introduced into evidence. Nancy Wires, the State informant who was present with Webb at the time of the purchase, substantiated Webb's testimony. The only people who saw the defendant on June 3, 1971, and observed the purchase were Wires and Webb. The defendant testified on his own behalf and denied being at the Armstrong residence on June 3, 1971. His testimony was corroborated by Valla Armstrong, who with her husband, two sons and a daughter lived at the residence where the alleged sale took place. Mrs. Armstrong also stated that on June 3, 1971, Wires visited her with a friend known to her as Jeff Hicks, who was in reality agent Webb. Mrs. Armstrong stated she went into the bedroom with Wires and "shot some dope."

Defendant asserts he was denied his statutory and constitutional rights to a speedy trial. After defendant's case was remanded to the circuit court, defendant was presented with a copy of an indictment on August 30, 1974, charging the unlawful sale of heroin. Since defendant was on bond at this time, the State was required to try the defendant within 160 days of his demand for a speedy trial. (See Ill. Rev. Stat. 1975, ch. 38, par. 103—5(b).) On September 16, 1974, defendant filed such a demand and

the statutory period began to run. Defendant claims that more than 160 days, excluding delays attributed to defendant, elapsed from September 16, 1974, to the date of his trial on February 5, 1976, and suggests that our decision is controlled by a recent amendment to section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(f)). That section by its express terms is applicable only to crimes committed after March 1, 1977, and is therefore not available to defendant.

The rule which we must apply is stated in *People v. Zuniga*, 53 Ill. 2d 550, 293 N.E.2d 595, and requires commencement of a new 160-day period each time a delay is attributed to the defendant. Hence, we must determine whether between September 16, 1974, and February 5, 1976, more than 160 consecutive days passed without the occurrence of a delay which is properly attributable to defendant. An examination of the record reveals no such period, and we therefore hold that defendant's statutory right to a speedy trial was not violated. Our decision requires us to set forth only a few of the numerous motions filed by defendant from September of 1974 to February of 1976.

■■ On February 11, 1975, defendant requested a continuance, stating that defense counsel would be engaged in another trial on the proposed trial date of February 18, 1975. The motion was granted and the cause placed on the March 17, 1975, jury call. A continuance granted because defense counsel is engaged elsewhere constitutes a delay which is properly attributable to defendant. (*People v. Hairston*, 46 Ill. 2d 348, 263 N.E.2d 840.) Hence, the 160-day statutory period began to run anew as of March 17, 1975.

■■ On July 22, 1975, defendant moved to continue the case, stating that his expert witness would be unable to examine the substance alleged to contain heroin before trial and also that defense counsel would be engaged in trial in another city and could not adequately prepare for both cases. Neither party has called our attention to a case which deals with a continuance requested by defendant for two reasons, one of which might be attributable to the State. Without examining whether each of the two reasons given for the request is sufficient to cause the continuance delay to be charged to defendant, we think a delay is properly attributed to the defendant if any one of several reasons for the continuance would alone be sufficient to charge the delay to defendant. Since defendant requested the continuance in part because his counsel had a conflict which would not allow him to adequately prepare for trial, the delay was chargeable to defendant.

The trial was reset for August 18, 1974, and the statutory period began to run anew as of that date. Further continuances postponed the trial date until December 1, 1975. On November 24, 1975, defendant again

requested a continuance because his counsel had trials during the weeks of December 1, December 8 and December 15, which clearly caused the resulting delay to be attributed to defendant. Defendant's trial finally began on February 5, 1976. It is evident that no 160-day period elapsed between the trial and defendant's demand for speedy trial without the intervention of a delay caused or attributable to defendant. Defendant is therefore not entitled to discharge under section 103—5(b). As to defendant's assertion that he has been denied his constitutional right to a speedy trial, we find his arguments unpersuasive. It is sufficient that as heretofore described, the trial was delayed by defendant's numerous requests for continuances, thereby refuting any contention that defendant was denied his constitutional right to a speedy trial.

■■ The defendant argues that he is entitled to a new trial because the trial court improperly denied defendant's motion for substitution of judges under section 114—5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 114—5(a)). There is no dispute that defendant filed his motion within 10 days after the cause was assigned to Judge O'Shea, as is required by section 114—5(a). The State argues that while defendant comes within the 10-day filing requirement of section 114—5(a), Judge O'Shea had already ruled on substantial issues in the case and defendant's motion was therefore too late. In *People v. Speck*, 41 Ill. 2d 177, 242 N.E.2d 208, *rev'd on other grounds*, 403 U.S. 946, 29 L. Ed. 2d 855, 91 S. Ct. 2279, defendant had filed a written motion for substitution of judges under section 114—5(a) within 10 days after the cause had been placed on the trial call of a judge. The court ruled that because the assigned judge had already made rulings on matters going to the merits of the case, the motion was too late. Hence, the sole issue for this court to decide is whether the trial judge made any rulings going to the merits before the cause was assigned to him.

Prior to the case being assigned, the trial judge had ruled on dismissal motions and a motion to suppress eye witness identification. A motion to suppress evidence and a motion to dismiss have both been held to constitute a ruling on the merits. (See *People v. Speck*, 41 Ill. 2d 177, 242 N.E.2d 208, *rev'd on other grounds*, 403 U.S. 946, 29 L. Ed. 2d 855, 91 S. Ct. 2279, and *People v. Chambers*, 9 Ill. 2d 83, 136 N.E.2d 812.) We therefore must hold that defendant's motion for substitution of judges, while coming within the time required of section 114—5(a), was nevertheless filed too late.

■■ Defendant contends that the State failed to establish a complete chain of custody of the heroin between the time it was first seized and its introduction at trial. It is well established that before narcotics may be admitted into evidence, the State must show sufficient continuity of possession between the time the narcotics were seized to the time they

were offered into evidence, so as to negate the possibility of tampering or substitution. (*People v. Anthony*, 28 Ill. 2d 65, 190 N.E.2d 837.) Yet, such a rule "does not require the prosecution to exclude all possibility that the articles may have been tampered with, rather, the court must be satisfied that in reasonable probability the article has not been changed in any important aspect." (*People v. Marquis*, 24 Ill. App. 3d 653, 662, 321 N.E.2d 480, 487.) The present chain of custody extends for a period of over five years and traced the heroin through the following individuals and offices: the officer purchasing the heroin, the chemical analyst, the clerk of the circuit court of Rock Island County, the Third District Appellate Court, the clerk of the circuit court of Rock Island County on remand, the Rock Island County Court administrative office, the State's Attorney's office, the chemical analyst for reanalysis, the State's Attorney's office, and finally being introduced into evidence at the second trial over defendant's objection. We have examined the entire chain of custody and find it sufficient to establish that the evidence introduced was the evidence seized and to exclude any reasonable possibility of tampering or alteration.

We think it important to note that the most significant links in the chain of custody, *i.e.*, the time the evidence was seized until its introduction at the first trial, were well documented. The foil packet of heroin was identified by agents Webb and Erdman from the piece of paper which was placed within the packet at the time of its purchase. The State was not required to exclude all possibility of tampering but only that in all reasonable probability the evidence had not been changed in any important respect. (*People v. Cain*, 35 Ill. 2d 184, 220 N.E.2d 195; *People v. Marquis*, 24 Ill. App. 3d 653, 321 N.E.2d 480.) We believe the State adequately established such a reasonable probability.

■■ While examining the court reporter, Arno Bufe, to establish the chain of custody, the State sought and was granted permission to read to the jury a limited portion of the transcript from the first trial. Defendant contends this was hearsay which did not fall under any recognized exception to the rule and therefore constitutes error. We disagree. The use of the transcript clearly came under the past recollection recorded exception to the hearsay rule. A proper foundation for the transcripts admission into evidence was made when the witness testified that he had no independent recollection, that the writing was prepared near in time to the event, that he had firsthand knowledge, and most important, that the writing was accurate. Hence, the portion of the transcript read into evidence was properly admitted under the past recollection recorded exception to the hearsay rule. See *People v. Strothers*, 53 Ill. 2d 95, 290 N.E.2d 201.

■■ Defendant next contends that he was not proven guilty beyond a

reasonable doubt. The evidence of defendant's selling heroin was conflicting. The State introduced the testimony of Webb and Wires that defendant had sold heroin to Webb. The defendant and his witness, Valla Armstrong, testified that the defendant was not present in the Armstrong house on the day in question and no sale of heroin occurred. Defendant also testified that he was staying at the Modernistic Motel on the day of the alleged sale. The State rebutted his testimony by introducing the ledger for the Modernistic Motel which indicates that James Lewis was not registered at the motel on June 3, 1971, the date of the alleged sale. Given the nature of the evidence presented and the issues of credibility necessarily attendant to conflicting testimony, it was within the jury's province to determine defendant's guilt or innocence. The testimony of a single witness, if positive and credible, is sufficient to sustain a conviction, even though contradicted by the accused. (*People v. Wilkins*, 36 Ill. App. 3d 761, 344 N.E.2d 724.) Webb was a credible witness who gave a clear and convincing account of the sale, an account which was corroborated by Miss Wires. While the credibility of Miss Wires was impaired by the fact she had been an addict at sometime prior to June 3, 1971 (though rehabilitated as of June 3, 1971), the defendant's corroborating witness, Valla Armstrong, had two prior felony convictions. Any conflicts in the testimony of these four witnesses involved matters of credibility to be resolved by the jury. The State's evidence, if believed by the jury, was sufficient to prove defendant guilty beyond a reasonable doubt.

■■ In connection with the State's impeachment of defendant's testimony by use of a motel ledger, defendant claims the ledger was erroneously admitted. Defendant argues that a proper foundation for admission of the ledger was not made because the witness who testified to the authenticity of the ledger, Paul Dick, was not the individual who made the entries on June 3, nor was he responsible for keeping the record. Dick did identify the handwriting in the ledger as that of his father, the owner of the Modernistic Motel. Dick testified to the procedures used in compiling and keeping the manifest and that it was made in the ordinary course of business. To the best of the witness's knowledge, the ledger accurately reflected the information provided on the registration cards which were filled out by motel guests.

We need only refer to section 115—5 of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 115—5) to refute defendant's arguments. That section requires only that the business record be made in the regular course of business and that it was the regular course of such business to make the record. Both requirements were established by Dick's testimony. As the statute states, the lack of personal knowledge of the witness is a matter which affects the weight and credibility to be given the ledger, but does not affect its admissibility.

The next error alleged relates to the testimony of Miss Wires, which defendant claims included impermissible reference to prior crimes or criminal misconduct of the defendant. On direct examination by the State, Wires made no reference to a prior sale of heroin which allegedly occurred on June 2, 1971. (See *People v. Lewis*, 12 Ill. App. 3d 762, 301 N.E.2d 469.) Prior to trial, defense counsel had taken a statement from Wires and reduced this statement to writing. During cross-examination, defense counsel attempted to impeach Wires' testimony by use of an allegedly inconsistent statement contained in the written statement. Defense counsel read portions of the prior statement to the jury. At the conclusion of cross-examination and out of the presence of the jury, the prosecution informed the court that the statement made references to two buys from defendant and that the circumstances of the questions and answers concerning each buy were thoroughly intermingled in the statement. It was the State's position that the alleged inconsistent statement did not relate to the June 3 purchase, but rather to the June 2 purchase. The court allowed the prosecution to refer to both heroin sales in an effort to demonstrate to the jury that the witness was not lying because the statement defense counsel had read was not inconsistent with the witness's testimony.

■■ ■ The subsequent questions which were asked on redirect mentioned the June 2 sale only by referring to questions and statements made by defense counsel during the previous cross-examination. We believe that any reference to the June 2 sale was precipitated only in response to matters which defendant first introduced. If one party opens up an issue and the other party will be prejudiced unless he can introduce contradictory or explanatory evidence, then the prejudiced party will be permitted to introduce such evidence, even though it might otherwise be improper. (31A C.J.S. *Evidence* §190 (1964); *Herget National Bank v. Johnson*, 21 Ill. App. 3d 1024, 316 N.E.2d 191; *Werdell v. Turzynski*, 128 Ill. App. 2d 139, 262 N.E.2d 833. See also 18 Ill. L. & Prac. *Evidence* §44 (1956).) Defendant cannot interject an issue into his case and then contend that the bringing of it to the attention of the jury was erroneous. (*People v. George*, 49 Ill. 2d 372, 274 N.E.2d 26; *People v. Tennant*, 32 Ill. App. 3d 1034, 337 N.E.2d 322. See also *People v. Peter*, 55 Ill. 2d 443, 303 N.E.2d 398.) In *People v. Wilbert*, 15 Ill. App. 3d 974, 305 N.E.2d 173, the court approved of the doctrine of curative admissibility as announced by the Supreme Court of Pennsylvania in *Western Show Co. v. Mix* (1934), 315 Pa. 139, 173 A. 183. The court in *Mix* held that if irrelevant and collaterial matters are elicited by a party on cross-examination without objection, the opposing party would be permitted to rebut the erroneous evidence elicited by his antagonist. The court in *Wilbert* recognized that *Mix* involved a civil proceeding, but found no reason why the rule should not

be applicable to criminal cases as well. While the situation before us is somewhat different because no error was committed when the defendant attempted to impeach the witness from her extrajudicial statement, defendant was not entitled to select portions of the statement to suit his purposes if the statement, when taken as a whole, conveyed a different meaning. We do not question the defendant's right to use this statement in an effort to impeach the witness by a prior inconsistent statement. But when the defendant brought portions of the statement to the attention of the jury when he attempted to impeach the witness by reference to isolated answers from the extrajudicial statement, the State was entitled to rehabilitate the credibility of the witness by showing that there was nothing inconsistent about the statement because it was made with reference to an incident different from the one defendant had testified to on direct examination. We think it is important to note that the prosecution's questions on redirect were carefully directed toward establishing the context in which the alleged inconsistent statement occurred. Once the defendant opened the door, the State was entitled to refer to other criminal misconduct, but only to the limited extent necessary to explain or rebut defendant's attempted impeachment. The entire redirect examination of this witness, as reflected by the record, was limited to refuting the impeaching effect of defendant's cross-examination and defendant can not now claim error.

The remaining issue relates to the sentence imposed upon defendant. At the conclusion of the first trial, defendant received a sentence of from 15 to 30 years imprisonment. A sentence of from 3 to 15 years imprisonment and a $5,000 fine was imposed following a guilty verdict at retrial. Defendant contends the sentence imposed at the second trial violates section 5—5—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—5—4) which generally prohibits more severe penalties upon retrial after direct review. This section conforms statutory law to the rule announced in *North Carolina v. Pearson*, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072, and followed in *People v. Baze*, 43 Ill. 2d 298, 253 N.E.2d 392. There is no evidence of any conduct by defendant after imposition of the first sentence which would justify a more severe penalty upon retrial. (See *North Carolina v. Pearson*, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2972.) The sole issue is whether the sentence is more severe.

■■ We perceive two possible theories to be used in resolving this issue, each of which will achieve a different result. The first theory, which is the one defendant seems to advocate, states that any sentence is severable into two components of imprisonment and fine, and neither a greater fine nor a greater term of imprisonment can be imposed in the second sentence than was imposed in the first sentence. The second

theory states that the sentence must be judged as a whole in determining whether or not the second penalty is more severe than the first. There can be little doubt that under either theory, when the second sentence provides for a fine and in addition to the same term of imprisonment as was first imposed, the penalty is more severe. A more difficult problem is posed when the term of imprisonment is decreased, but the fine increases. We believe that the severity of a subsequent sentence should be judged as a whole. When the two sentences in question are compared, we do not find that the· fine imposed with the shorter term of imprisonment constitutes a more severe penalty than the longer term of imprisonment alone. We perceive no simplistic formula for making such a determination, for to do so would require reducing the years of a man's life to a monetary value, something we are unwilling to do. Upon giving due regard to the requirements of due process as elicitated in *North Carolina v. Pearson*, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072, we believe the degree to which the term of imprisonment was reduced and the magnitude of the fine does not dictate a finding that the second sentence is more severe than the first.

For the foregoing reasons the judgment and the sentence of the circuit court of Rock Island County are affirmed.

Judgment affirmed.

ALLOY, P. J., and SCOTT, J., concur.