UNITED STATES of America ex rel.
Henry L. WINTERS, Petitioner,

v.

Richard DeROBERTIS, et al.,
Respondents.

No. 82 C 776.

United States District Court,
N.D. Illinois, E.D.

Aug. 5, 1983.

James R. Daly, James A. Klenk, Reuben & Proctor, Chicago, Ill., for petitioner.

Neil F. Hartigan, Atty. Gen. of Illinois, James E. Fitzgerald, Asst. Atty. Gen., Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Henry Winters ("Winters") has filed a Verified Amended Petition (the "Amended Petition")[1] for a writ of habeas corpus under 28 U.S.C. § 2254 ("Section 2254"). Winters and respondents have also now filed cross motions for summary judgment. For the reasons stated in this memorandum opinion and order (1) decision on both summary judgment motions is deferred and (2) Winters' Amended Petition is dismissed without prejudice.

### Background

Following a jury trial Winters was convicted of murder and sentenced to prison for a 40 to 60 year term. Winters' conviction was affirmed on appeal, *People v. Winters,* 97 Ill.App.3d 288, 52 Ill.Dec. 763, 422 N.E.2d 972 (1st Dist.1981). Leave to appeal was denied by the Illinois Supreme Court, and the United States Supreme Court denied certiorari, 455 U.S. 923, 102 S.Ct. 1282, 71 L.Ed.2d 464 (1982).

Before the Illinois Appellate Court Winters' appointed counsel raised evidentiary grounds, arguing Winters was denied a fair trial by the admission of eight objects into evidence without proper foundations. 97 Ill.App.3d at 289, 52 Ill.Dec. at 764, 422 N.E.2d at 973. Though the Appellate Court ruled five of those objects were erroneously admitted into evidence, it held "a new trial is not required because there was other convincing and overwhelming evidence upon which to convict the defendant." 97 Ill.App.3d at 296, 52 Ill.Dec. at 302, 422 N.E.2d at 978.

Winters also apparently filed[2] a pro se Supplemental Brief and Argument with the Illinois Appellate Court. He addressed some of the particular evidentiary issues raised in his counsel's brief and some related evidentiary matters. But Winters' pro

---

1. Winters filed his original pro se petition February 19, 1982, and respondents answered March 12. On March 29 Winters moved for summary judgment. Thereafter this Court appointed James A. Klenk, Esq. and James R. Daly, Esq. of the law firm of Reuben & Proctor to represent Winters. They filed the Amended Petition January 26, 1983. Respondents answered that petition February 14. After the case was thus at issue the parties filed and briefed the motions now under consideration.

This Court thanks Messrs. Klenk and Daly for their pro bono efforts on Winters' behalf.

2. Paragraph 3 of the July ____, 1983 Affidavit of Reuben & Proctor docket clerk Nancy Witt ("Witt Aff.") says she found the first page of Winters' pro se brief in the Appellate Court's *Winters* case file. As discussed below, that still leaves questions as to what legal arguments were in fact presented to the Appellate Court.

se brief also stated at least the following additional issues:

1. whether the jury was prejudiced by certain prosecutorial comments about (a) an unidentified translucent substance taken from the murder victim's body cavities and (b) certain unproduced items allegedly found on Winters after his arrest;[3]

2. whether Winters was denied effective assistance of trial counsel; and

3. whether the totality of the evidence was sufficient to support Winters' conviction beyond a reasonable doubt.

None of those additional issues was specifically addressed in the Appellate Court's opinion.

In his pro se petition (and supporting brief) for leave to appeal to the Illinois Supreme Court, Winters raised at least five relevant issues:

1. whether there was adequate foundation for the three objects the Appellate Court found had properly been admitted into evidence;

2. whether Winters was proved guilty beyond a reasonable doubt;

3. whether he had ineffective assistance of trial counsel;

4. whether he was prejudiced by prosecutorial closing-argument comments on (a) his failure to testify and (b) various matters not in evidence; and

5. whether he was prejudiced by prosecutorial reference to items allegedly

found on Winters' person that cast suspicion on his sexual proclivities (see n. 3). Winters says (Amended Petition ¶ 13) and Respondents admit (Answer ¶ 13) he then petitioned for United States Supreme Court certiorari on the following grounds:

1. Both Illinois appellate courts had misapplied the "harmless error" rule.

2. Winters received ineffective assistance of counsel.

3. Certain evidence was improperly admitted in the trial court.

4. Winters was denied a fair trial by prosecutorial misconduct.

Now Winters' Amended Petition raises three claims for habeas relief:

1. During closing argument the prosecutor improperly commented on Winters' failure to testify (the "Fifth Amendment claim").

2. Winters was denied a fair trial by prosecutorial misconduct in referring to matters raising the homosexuality issue by innuendo (the "prosecutorial misconduct claim").

3. If only the properly admitted evidence were to be considered, Winters' conviction could not be sustained in beyond-a-reasonable-doubt terms (the "reasonable doubt claim").

Winters' Amended Petition makes no specific claim as to (1) ineffective assistance of counsel or (2) misapplication of the "harmless error" rule.[4]

---

**3.** Both those categories of evidence bore on homosexuality:

(a) Homosexual activity before the victim's death was suggested by the body cavity matter.

(b) Winters' homosexuality was suggested by the objects found on him, together with related police testimony.

During closing argument the prosecutor took advantage of those matters by posing innuendos that might well have prejudiced the jury.

**4.** Unlike Winters' reasonable doubt claim, which goes to the constitutional sufficiency of the *quantum* of properly admitted evidence, a harmless error claim would target the effect on the jury of the improperly admitted evidence. *See United States v. Hasting,* —— U.S. ——, 103 S.Ct. 1974, 1979–82, 76 L.Ed.2d 96 (opinion of the Court) and 1984–86 (Stevens, J., concur-

ring) (1983); *Connecticut v. Johnson,* —— U.S. ——, 103 S.Ct. 969, 975–78, 74 L.Ed.2d 823 (plurality opinion) and 978–79 (Stevens, J., concurring) (1983); *Chapman v. California,* 386 U.S. 18, 22–26, 87 S.Ct. 824, 827–829, 17 L.Ed.2d 705 (1967); *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230–231, 11 L.Ed.2d 171 (1963). By definition (because the Appellate Court agreed with part of Winters' evidentiary claims) the harmless error issue could not have been raised until the appeal to the Illinois Supreme Court (where it was perhaps comprehended within the "reasonable doubt" issue Winters posed to that court). Winters did specifically raise the harmless error argument in his petition for certiorari. Those matters may be relevant to the question of Winters' raising the harmless error claim in a subsequent habeas petition, as suggested later in this opinion.

### Exhaustion

Winters asserts (Amended Petition ¶ 15) but respondents deny (Answer ¶ 15) he has exhausted his available state court remedies. Winters is plainly correct on that score as to the three claims raised in his Amended Petition (save for the arguable conundrum posed at the end of this opinion).

As reflected in n. 2 and discussed in the next section of this opinion, it is unclear whether Winters' pro se brief actually was before, and was considered by, the Illinois Appellate Court. Moreover, as with many pro se briefs, Winters' was not precise in delineating the discrete issues it sought to argue. On the present record this Court cannot be at all certain whether Winters effectively appealed his conviction on the Fifth Amendment and prosecutorial misconduct grounds now urged as habeas claims.

■ But that doubt does not affect the question of *exhaustion* of state remedies:

1. If those grounds *were* raised on direct appeal, the Illinois Appellate Court's decision (which the Illinois Supreme Court let stand) is res judicata as to them, precluding postconviction relief in the Illinois courts. *People v. James,* 46 Ill.2d 71, 263 N.E.2d 5 (1970).

2. If they were not raised, they were forfeited or "waived," again precluding postconviction relief in the Illinois courts. *Id.*[5]

Thus in either event Winters has exhausted his available state remedies as to his Fifth Amendment and prosecutorial misconduct

claims. *Perry v. Fairman,* 702 F.2d 119, 120 (7th Cir.1983); *but cf. United States ex rel. Nance v. Fairman,* 707 F.2d 936, 940–41 (7th Cir.1983) (erroneously holding a failure to raise constitutional issue on direct appeal constitutes failure to meet exhaustion requirement).[6]

■ As for Winters' reasonable doubt claim, it was certainly embraced within the evidentiary grounds his counsel argued to the Illinois Appellate Court. Winters thus presented the "substance" of his present constitutional claim to the state court, *Toney v. Franzen,* 687 F.2d 1016, 1021–22 (7th Cir.1982). Moreover, even had Winters failed to raise the reasonable doubt claim before the Appellate Court, that failure would constitute a forfeiture or "waiver" under *James,* and so once again Winters would have exhausted his state remedies as to that claim.

### Waiver

■ After the original briefing schedules on the present motions had been completed, this Court directed the parties to address in supplemental memoranda whether Winters had waived his Fifth Amendment and prosecutorial misconduct claims by not raising them on direct appeal in the Illinois courts.[7] Such a procedural default would bar consideration of those claims by this Court absent a showing of "cause and actual prejudice." *Engle v. Isaac,* 456 U.S. 107, 128–29, 102 S.Ct. 1558, 1571–72, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 90–91, 97 S.Ct. 2497, 2508–2509, 53 L.Ed.2d 594

---

**5.** Our Court of Appeals, in recently describing the *James* doctrine, has pointed out "forfeiture" is a more appropriate term than "waiver" to describe the consequence of a failure to raise an issue on direct appeal. *Gray v. Greer,* 707 F.2d 965, 967 n. 3 (7th Cir.1983).

**6.** As with the "forfeited" v. "waived" dichotomy, perhaps the problem that led the court astray in *Nance* is partly one of vocabulary. Normally "exhaustion" in the habeas sense is like the "exhaustion of administrative remedies" concept, under which a remedy must in fact have been pursued to be "exhausted". But where no state remedy still exists—as by operation of the *James* rule—there is nothing re-

maining to be "exhausted." Section 2254(b) allows federal habeas if petitioner "has exhausted the remedies *available* in the courts of the State, or . . . there is . . . an absence of *available* State corrective process . . ." (emphasis added). Thus *Nance* confuses *exhaustion* with the separate doctrine of *waiver. See Perry,* 702 F.2d at 120; *Carbajol v. Fairman,* 700 F.2d 397, 399 (7th Cir.1983); *United States ex rel. Allen v. Hardy,* 556 F.Supp. 464, 466 n. 3 (N.D.Ill.1983).

**7.** Respondents had not discussed the waiver issue in their Answer or prior memoranda. They do not now claim Winters' reasonable doubt claim was waived (Supp. Mem. 2).

(1977); *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354, 361 (7th Cir.1983).

Witt Aff. ¶ 3 says the first page of Winters' pro se brief was located in the Appellate Court's *Winters* case file. However, the parties have provided no further information as to the official docketing of that brief or its actual consideration by the Appellate Court. Consequently, this Court is unsure whether any of the issues raised in the pro se brief were in fact presented to the Appellate Court. *See Spurlark,* 699 F.2d at 356–57.

■ Additionally, although the pro se Appellate Court brief explicitly raised the prosecutorial misconduct issue as to the homosexuality innuendos, it did not differentiate a separate Fifth Amendment claim. Winters now says (Second Supp. Mem. 2) that claim was "fairly subsumed within the general prosecutorial misconduct during closing argument claim." But *Spurlark,* 699 F.2d at 356–57, teaches a claim must be clearly presented to the state courts to qualify as "fair presentation," so that contemporaneously invisible "seeds" of an argument are not enough. *See also Mattes v. Gagnon,* 700 F.2d 1096, 1098 n. 1 (7th Cir. 1983). As a result, whether or not Winters' pro se brief was before the Appellate Court, Winters committed a procedural default at the Appellate Court level by not raising a claim as to prosecutorial comment on his failure to testify.

Winters believes (Second Supp. Mem. 5) he has another string to his bow because he unquestionably stated his Fifth Amendment and prosecutorial misconduct claims in seeking leave to appeal to the Illinois Supreme Court. No doubt Winters had to give that Court the opportunity to review those claims, *Toney,* 687 F.2d at 1021. But Winters now suggests he thereby also erased the effect of not having first posed to the *Appellate* Court his Fifth Amend-

ment claim and perhaps his prosecutorial misconduct claim. That argument is really at variance with the *James* "waiver" doctrine, because it presupposes a procedural default can be undone by a *later* procedural move. And although the Illinois Supreme Court has discretion to take note of a "plain error" not argued in the court below (Supreme Court Rule 615, Ill.Rev.Stat. ch. 110A, § 615), here the Supreme Court *denied* leave to appeal. Surely it is reasonable to suppose failure to raise an issue before the Appellate Court is one ground upon which that decision might have been based. Thus denial of such leave might ordinarily confirm a "waiver" or forfeiture had occurred below—a conclusion precisely opposite to that now urged by Winters.

In summary it appears:

1. Winters waived his Fifth Amendment claim by failing to raise that issue on direct appeal.

2. He similarly waived his prosecutorial misconduct claim *unless* that claim was actually and effectively presented to the Appellate Court for its review.

3. He did *not* waive his reasonable doubt claim because it was comprehended within the grounds raised in the Appellate Court.[8]

That means this Court could now pass on Winters' reasonable doubt claim,[9] but consideration of his Fifth Amendment and prosecutorial misconduct claims depends upon Winters' satisfaction of the "cause and actual prejudice" standard as to the former and possibly also as to the latter (depending on whether that issue, as presented by the pro se brief, was in fact effectively before the Appellate Court).

*Cause and Actual Prejudice*

Winters argues (Second Supp. Mem. 5–8) the "cause" for any procedural defaults was ineffective assistance of appellate counsel—a "cause" that would apply equally to

---

8. Because the Appellate Court did address the sufficiency of the evidence, Winters need not meet the "cause and prejudice" standard even if he "waived" his reasonable doubt claim. *United States ex rel. Williams v. Franzen,* 687 F.2d 944, 951–52 (7th Cir.1982); *Allen,* 556 F.Supp. at 466.

9. That is obviously Winters' weakest claim, given the high constitutional wall he must surmount. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Jefferson,* 714 F.2d 689 at 694 (7th Cir. 1983).

the clearly waived Fifth Amendment claim and to the prosecutorial misconduct claim (which was presented to the Appellate Court, if at all, in his pro se brief). Our Court of Appeals has indicated (in a 28 U.S.C. § 2255 case) incompetence of appellate counsel, if demonstrated, may constitute "cause" for *Wainwright* purposes. *Norris v. United States,* 687 F.2d 899, 903 (7th Cir.1982). Because the resulting prejudice to Winters is manifest, he may therefore be able to obtain habeas review of both his Fifth Amendment and (even if waived) prosecutorial misconduct claims.

Winters asserts in both (1) an April 1, 1980 Affidavit (¶ 3) attached to his pro se Appellate Court brief and (2) his sworn petition for leave to appeal to the Illinois Supreme Court (¶ 2) he unsuccessfully attempted to have his appellate counsel raise the issues he posed in his pro se Appellate Court brief. Those assertions might accord with Winters' present contention he received ineffective assistance of appellate counsel. This Court's own review of the record suggests Winters' Fifth Amendment and prosecutorial misconduct claims (and a possible claim as to misapplication of the harmless error doctrine [10]) are quite substantial, so they are not readily regarded as "weaker arguments" winnowed out by appellate counsel in the exercise of professional judgment. *Cf. Jones v. Barnes,* — U.S. —, —— – ——, 103 S.Ct. 3308, 3311–13, 77 L.Ed.2d 987 (1983) (finding ineffective assistance of appellate counsel not established where counsel exercised independent judgment as to which colorable claims to urge on appeal); *Spurlark,* 699 F.2d at 361 (finding no *Wainwright* "cause" where appellate counsel ignored arguable issue as to choice of counsel at sentencing).

Yet *establishing* appellate counsel's incompetence would clearly require a hearing

in this Court. Indeed such claimed incompetence is itself a potential habeas ground—and an unexhausted one, for Winters could raise that claim under the Illinois Post-Conviction Hearing Act, Ill.Rev.Stat. ch. 38, §§ 122–1 to 122–7 (the "Post-Conviction Act"). *United States ex rel. Clauser v. Shadid,* 677 F.2d 591, 593–94 (7th Cir. 1982).[11]

That fact poses a question this Court has not seen treated in the case law: Where exhausted claims require factual consideration, in the *Wainwright* cause-prejudice determination, of matters that would themselves constitute independent habeas grounds but are "unexhausted" in that context, can and should the court reach those matters as an original proposition—or should they be directed to the state courts first? For a federal court to decide those issues in the first instance would involve it by indirection in the identical constitutional claims it could not address directly under *Rose v. Lundy.*

Plainly the identical comity considerations that underlie the exhaustion doctrine, *see Rose,* 455 U.S. at 518–19, 102 S.Ct. at 1203–04, argue here for Winters' raising his ineffective assistance of appellate counsel claim under the Post-Conviction Act rather than presenting the thorny problem identified in the preceding paragraph. That route would also allow the state court to determine the related factual questions as to the presentation of the pro se brief to the Appellate Court.

It is possible the state court route will lead to post-conviction relief. But if such relief is denied, Winters may return to this Court and renew his habeas petition, adding perhaps claims based (1) directly on ineffective assistance of appellate counsel [12] and (2) also on state court misapplication of the harmless error doctrine.[13]

---

10. See n. 4 and cases cited there.

11. Were Winters to seek to add that ineffective-assistance-of-counsel claim to his habeas petition, the entire petition (a "mixed" petition) would have to be dismissed under *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). But contrary to the implications of Respondents' Supp. Mem. 3–5, Winters can properly elect not to include that claim in his

habeas petition. *See id.* at 520–21, 102 S.Ct. at 1204–05.

12. Winters would then have exhausted that claim.

13. As a matter of judicial economy, it is true this form of resolution might possibly lead to two (one state, one federal) rather than one

*Conclusion*

Accordingly decision on Winters' and Respondents' summary judgment motions is deferred. Winters' Amended Petition is dismissed without prejudice to his refiling his petition, possibly revised, should he not obtain relief in state post-conviction proceedings.

post-conviction proceeding (if no relief is forthcoming under the Post-Conviction Act). On the other hand, for this Court to proceed in the first instance on the ineffective assistance claim would create the needless risk of a hearing and decision that could ultimately founder on grounds analogous to the *Rose* rationale.