UNITED STATES of America ex rel. Frederick MOORE, Petitioner,

v.

James THIERET and Neil F. Hartigan, Respondents.

No. 86 C 3507.

United States District Court, N.D. Illinois, E.D.

April 10, 1987.

Frederick Moore, pro se.

Gary H. Schwartz, Mark Rotert, Asst. Attys. Gen., Criminal Appeals Div., Chicago, Ill., for respondents.

## MEMORANDUM OPINION.

PRENTICE H. MARSHALL, District Judge.

Petitioner Frederick Moore, an inmate at the Menard Correctional Center, seeks a writ of habeas corpus on the ground that he was convicted of murder without sufficient evidence of his guilt. Respondents, Illinois Attorney General Neil F. Hartigan and James Thieret, Menard's warden, move for summary judgment, claiming that Moore forfeited his right to seek a writ of habeas corpus because he did not pursue all his state remedies.

The events surrounding the murder for which Moore was convicted took place around the northwest portion of Douglas Park in Chicago.[1] The park is bounded on the north by Roosevelt Road and on the

---

1. Unless otherwise specified, these facts are drawn from Moore's Supporting Memorandum, which cites the trial record as its source.

west by Albany Street. Collins High School is located in the northwest section, and Thompson Drive runs roughly parallel to Albany Street through the northern third of the park. The Vice Lords gang dominated north of Roosevelt Road while the rival Black Gangster Disciples gang controlled the area south of Roosevelt Road, including the park.

On the night of July 18, 1984, William Perkins, Jr., 19, and four companions—Kenneth Shannon, 18 at the time of the trial; Mark Shines, 15; Christopher Holmes, 18; and James Jones, 19—were playing basketball just north of Roosevelt Road. Record at 7, 9, 102, 117. *People v. Moore*, No. 84-C-8556-01 (Cir.Ct.Cook County Dec. 19, 1984) [hereinafter R.]. Shannon testified at the trial that he played basketball for Manley High School in Chicago and did not belong to a gang. R. 14. Shines said he was a member of the Vice Lords, while Jones said that he was a former member. Holmes, who at the time of Moore's trial was in Cook County Jail for violating probation and was awaiting trial for unlawful use of weapons, said he associated with Vice Lord members but denied any personal membership in the gang.

Each of these four testified that at about 10 p.m. they and Perkins were walking in a loose group through Douglas Park to visit a friend who lived at the west end of the park. As the group approached and Shines, Perkins, and Holmes passed the intersection of Albany Street and Douglas Boulevard, Moore, 22 at the time of the trial, and a companion, Melvin Robinson, 19, came out from between a school and a building. R. 150. Moore and Robinson began making signs that showed they were members of the Black Gangster Disciples.

Shannon, Shines, and Jones testified that Moore then reached into his jacket and pulled out a gun. Holmes additionally testified that Robinson had a shotgun and that Moore fired two or three shots at this corner, but none of the other witnesses heard any shots there. At this point, Holmes, Jones, and Shines testified, all five of them ran through the park, with Moore and Robinson in pursuit. Holmes, Shan-

non, and Shines contended that ten to fifteen Disciples also were running after them, but only Holmes was able to identify any of them.

Perkins ended up at the top of a tunnel near Thompson Drive and the Collins High School parking lot, at the northwest part of Douglas Park. As Perkins entered the tunnel, Shines said he saw Moore pull out a gun and fire twice in Perkins' direction. R. 66-67, 84-85. The other witnesses also heard two gunshots about this time. Perkins fell on the grass on the other side of the tunnel. Then Holmes, Shines, Jones, and Shannon carried Perkins to a nearby convenience store. Perkins died of a gunshot wound to the heart. R. 151-52.

At approximately 10:45 that night, police approached Moore, who was playing basketball at an empty lot near his home and two blocks from the intersection of Albany Street and Douglas Boulevard. When police called Moore's name, he ran. Later that night, Moore turned himself in, telling police he had fled because he thought they were going to arrest him for having missed a court date on a drug charge. Chemical tests, performed on both Moore and Robinson to determine if either had recently fired a gun, were negative. No evidence was introduced at trial regarding the reliability of these tests. *People v. Moore*, [104 Ill. Dec. 377, 502 N.E.2d 874 (Table)] No. 85-0708, slip op. at 5 (Ill.App.Ct.1986).

In his defense, Moore admitted membership in the Black Gangster Souls, an organization he described as an ally of the Black Gangster Disciples yet not a rival of the Vice Lords. R. 223-28. He further stated that throughout the time of the shooting, he, Robinson, and others were playing basketball in the empty lot near his home. Five witnesses, including Robinson, an admitted member of what he called the "Black Gangsters," and Robinson's brother, corroborated Moore's alibi. See R. 173, 188, 196 *passim*. The trial judge, however, deemed these witnesses "suspect," adding, "I truly believe some of them were out there too." R. 245.

The judge found Moore guilty of murder but acquitted Robinson. Denying Moore's

post-trial motion on February 20, 1985, the judge sentenced Moore to twenty-five years imprisonment. The Illinois Appellate Court rejected Moore's claim of insufficient evidence and affirmed his conviction. *People v. Moore*, 104 Ill.Dec. 377, 502 N.E.2d 874 (Ill.App.Ct.1986). Moore did not seek leave to appeal to the Illinois Supreme Court; rather, on May 16, 1986, he filed a *pro se* petition in this court seeking habeas corpus relief under 28 U.S.C. § 2254 (1982). Moore claims there was insufficient evidence to support the murder conviction.

▆▆▆ First we must deal with respondents' contentions that petitioner failed to exhaust his state remedies because he did not seek relief from the Illinois Supreme Court. Memorandum of Law in Support of the Answer and Motion for Summary Judgment at 1. They correctly note that under 28 U.S.C. § 2254(b) (1982), federal habeas review is available only after a petitioner exhausts all state remedies; that is, when he has no "right under the law of the State to raise, by any available procedure, the question presented." *Id.* § 2254(c). Since the time for him to appeal to the state supreme court has long passed, see Ill.Rev. Stat. ch. 110A, ¶ 606(b), Moore appears to have no right to relief in that court. Nor do respondents suggest any way Moore might revive his insufficient evidence claim in the state courts. From this perspective, then, Moore's insufficient evidence claim is exhausted for purposes of the federal habeas corpus statute. *See Nutall v. Greer*, 764 F.2d 462, 463 (7th Cir.1985); *United States ex rel. Winters v. DeRobertis*, 568 F.Supp. 1484, 1487 & n. 6 (N.D.Ill.1983).

▆▆▆ Respondents further contend that Moore raises a claim that his appellate counsel's failure to advise him to appeal to the state supreme court violated Moore's constitutional rights. Respondents' Reply to Petitioner's Response to Respondents' Answer and Motion for Summary Judgment at 2. Because no such claim was raised in state court, it is, as respondents properly point out, unexhausted. Moore would have to seek relief on that claim pursuant to the Post-Conviction Hearing Act, Ill.Rev.Stat. ch. 38, ¶ 122–1 *et seq.*,

before pressing any federal habeas petition. *Winters*, 568 F.Supp. at 1489–90; *see also Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

But Moore explicitly has declined to press the claim that his appellate counsel's conduct was constitutionally defective. Response to Respondents Reply [Pet.Resp. to Reply] at 1. Rather, he asks us, as he may, see *Winters*, 568 F.Sup. at 1489 n. 11, to consider his appellate counsel's conduct solely as his excuse for failing to appeal his insufficient evidence claim, and not as a separate, unexhausted claim. Pet.Resp. to Reply at 2.

Since Moore's insufficient evidence claim is exhausted, the question becomes whether Moore, by his procedural default (his failure to seek leave to appeal to the state supreme court), forfeited his right to seek federal habeas relief. *See Nutall*, 764 F.2d at 463.

The United States Supreme Court considered this precise issue in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), holding that federal courts should decline to review habeas petitions only where a petitioner, in failing totally to pursue a state appeal, had "deliberately bypassed" state procedures in favor of the federal forum. *Id.* at 438, 83 S.Ct. at 849. In this case, Moore claims that his failure to appeal resulted from ignorance rather than a deliberate attempt to evade the state appellate process. Response to Answer and Motion for Summary Judgment [Pet. Resp.] at 1–2; Pet.Resp. to Reply. Applying *Fay*, then, we would reach the merits of his insufficient evidence claim.

▆▆▆ Yet more recent opinions have sapped the vitality of *Fay*'s deliberate bypass standard. In *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), for example, the Court narrowed *Fay*'s scope, holding that where a petitioner fails to appeal certain issues to the state appellate court, the federal court should decline habeas review not only upon proof of deliberate bypass, but in other circumstances as well. Specifically, a petitioner will be deemed to have waived his right to federal habeas review unless he can show

both an adequate "cause" for his procedural default, and that "actual prejudice" will result if the federal court does not hear his petition. *Id.* at 84–87, 97 S.Ct. at 2505–06. *See also Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982).

The Supreme Court has not ruled whether *Sykes'* cause-and-prejudice standard or *Fay's* deliberate bypass rule applies where, as here, petitioner failed to seek leave to appeal. *Murray v. Carrier*, —— U.S. ——, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986). But we are bound by our court of appeals, which squarely applied the *Sykes* cause-and-prejudice standard to a failure to seek leave to appeal to the Illinois Supreme Court. *Nutall*, 764 F.2d at 465.[2]

■ Applying the cause-and-prejudice standard, Moore would have us find that his appellate counsel's failure to advise him to appeal to the Illinois Supreme Court, while not amounting to constitutionally ineffective assistance of counsel, constitutes adequate cause for his procedural default. Pet. Resp. at 1–2; Pet. Resp. to Reply. A constitutional ineffective assistance claim would establish cause for purposes of the *Sykes* test. *Murray*, 106 S.Ct. at 2646. It is less clear whether deficient counsel of less than constitutional magnitude would equal cause, but we need not decide that issue. For Moore must prove both prongs of the cause-and-prejudice test, *Murray*, 106 S.Ct. at 2649, and he has not shown actual prejudice.

■ Actual prejudice results when errors in state proceedings were so grievous that they tainted the entire proceeding with " 'error of constitutional dimensions.' " *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982)). In this case, Moore will suffer actual prejudice only if an inability to obtain federal habeas review prevents him from litigating a valid claim that he was

convicted on insufficient evidence. Thus, we shall examine the merits of his insufficient evidence claim for the purpose of determining whether he will be prejudiced should we find that he has waived federal habeas review by failing to seek leave to appeal to the Illinois Supreme Court. *Accord United States ex rel. Link v. Lane*, 811 F.2d 1166, 1170 (7th Cir.1987).

The state's evidence against Moore must be deemed sufficient if we find that "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). By this standard, the trier of fact, and not the federal court reviewing the case on a habeas petition, resolves all conflicts in testimony and determines witnesses' credibility. *Id.; see also Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983).

Moore contends that the state presented insufficient evidence to provide he murdered Perkins, pointing to discrepancies in state witnesses' testimony regarding: how many guns there were; where and how many shots were fired; and whether a crowd of rival gang members chased Perkins and his companions.

■ We conclude that the trier of fact reasonably could have found that Moore murdered Perkins. Despite some inconsistencies, all four prosecution witnesses' testimony was substantially similar on the essential points: Moore confronted them, chased them, and then shot twice, killing Perkins. Although the defense witnesses contended that Moore was playing basketball a few blocks away at the time of the shooting, the trial court properly could have discredited this alibi testimony.

---

**2.** We question the wisdom of *Nutall.* Petitions for leave to appeal are not and should not be commonplace in Illinois appellate practice, criminal or civil. They are akin to a petition for writ of certiorari in our practice. Those which are presented are seldom granted. *Nutall* will serve to accomplish only one thing, a prolif-eration of denied petitions. Of course it will also serve to screen out habeas petitions. But that should not be our purpose. However, if we were to disregard *Nutall* and apply *Fay* and thus reach the merits, Moore would not prevail on his insufficient evidence claim. *See* discussion of actual prejudice *infra.*

Because Moore has not shown that he was improperly convicted on insufficient evidence, he will suffer no prejudice should we decline to consider his federal habeas petition further. Since he thus has not met the cause-and-prejudice test established in *Sykes,* we conclude that Moore, by failing to appeal his conviction to the Illinois Supreme Court, waived his right to obtain federal habeas relief.

### ORDER

Respondents' motion for summary judgment pursuant to Fed.R.Civ.P. 56 is granted. Judgment will enter dismissing the action. A certificate of probable cause to appeal is granted. 28 U.S.C. § 2253 (1982).