(No. 36762.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD ANTHONY, Plaintiff in Error.

*Opinion filed May 27, 1963.*

GERALD A. GITLES, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and EDWARD J. HLADIS and WILLIAM J. MARTIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

An indictment returned to the criminal court of Cook County charged that the defendant unlawfully sold, dispensed and possessed narcotics. He was tried by the court without a jury, found guilty and sentenced to the penitentiary for a term of not less than 10 nor more than 18 years.

On January 6, 1959, about 9:25 P.M., detective James H. Parker of the narcotics section of the Chicago Police Department met Eddie Parrish, an informer, at the detective bureau. There Parker recorded the serial numbers of five one-dollar bills and one five-dollar bill. Another detective, James Donnelly, testified that he searched both Parker and Parrish and found that neither of them were in possession of narcotics. Donnelly, Parker, Parrish and four other police officers then drove in two cars to the vicinity of

Western Avenue and Lake Street. Parrish and detective Parker got out of the car and walked to a tavern at Oakley and Lake streets. There Parrish was supposed to introduce a person other than the defendant to Parker. This person was not at the tavern and they left. Thereupon the defendant came out of the tavern and, according to Parker, asked him if he wanted some "stuff". After Parker indicated that he did, defendant told him to walk down the street. As they were walking defendant stated that "This is my last bag". After being asked if he had any "bread", Parker testified that he thereupon gave the marked money to defendant who simultaneously handed him a tinfoil packet of white powder. The informer did not participate in the sale and, according to Parker, was standing too far behind him and the defendant at the time of the sale to have been able to observe exactly what was happening. Parker then arrested the defendant and escorted him to the corner where they waited for one of the police cars and additional police officers to arrive. According to Parker, the defendant, upon being informed that he was under arrest, exclaimed that he had made a sale to a police officer. Before putting defendant into the car Parker testified that he retrieved the marked money from the defendant's pocket.

The defendant denied that he participated in any sale to Parker, although he did admit that he was a dope addict, and that he met Parrish, a friend of his, and Parker on the date in question. He also admitted that Parker asked him if he could obtain some narcotics and that he replied, "I told him I don't know, I might, come on and go with me", and that Parker, Parrish and he started down the street. The defendant denied that he received any money from Parker or that any money was found on him in any search. He asserted that he gave the informer two sticks of "Doublemint" chewing gum, that the informer handed one stick to Parker, who then attempted to give some money to the defendant. Upon defendant's refusal to accept same,

defendant claimed that the informer then put the money in his pocket.

After the defendant and Parker were seated in the police car officer Donnelly performed a field test on the white powder, which test resulted in a positive reaction indicating that opium might be present. He then returned the narcotics to Parker and they then returned to the detective bureau, arriving there after midnight on January 7, 1959. Parker placed the tinfoil pack containing the white powder in an inventory envelope, sealed the envelope, and wrote "J. Parker" across the back flap and put cellophane tape across his signature. He then handed the envelope over to the man on duty at the crime laboratory. Daniel Dragel, a chemist and director of the laboratory, testified that on January 7 he personally removed the sealed envelope from a locked cabinet into which he stated that he or another man on duty would have placed the envelope. He broke the seal, tested a portion of the powder and found 95% of the powder to be sugar and the remaining 5% heroin. He then placed certain identifying marks on the envelope and resealed it. He testified that the envelope was in this same condition on the day of the trial.

The defendant contends that he was not proved guilty beyond a reasonable doubt, that an insufficient foundation was laid for the admission into evidence of the narcotics, and that the court-appointed defense attorney was incompetent.

In order to establish a foundation for the admission into evidence of the narcotics, the State had the burden of showing a sufficient continuity of possession of same from the time of the alleged sale to the time the white powder and the testimony regarding its chemical content was offered into evidence so as to negate the possibility of tampering or substitution. The defendant contends that because there was no direct testimony from the man in the crime laboratory who actually received the sealed envelope from officer

Parker and placed it into a locked cabinet that the chain of possession was broken and the State's foundation insufficient. No objection was made to the admission of this evidence and its admissibility could not ordinarily now be questioned. (*People* v. *Polk,* 19 Ill.2d 310). However, in view of the defendant's claim that he was incompetently represented in part because of his attorney's failure to object to the admission of this evidence we will consider this point. The record here discloses that the narcotics were taken from the defendant, placed in a sealed envelope and brought by Parker to the crime laboratory. Before delivering the envelope Parker wrote his name on the back flap of the envelope and covered the same with cellophane tape. The chemist who examined the narcotics found the envelope in the same sealed condition with no suggestion of tampering, alteration or substitution. In our opinion the techniques employed were sufficient to make admissible the testimony as to the result of the chemical analysis. *People* v. *Norman,* 24 Ill.2d 403.

The evidence offered by the prosecution, including the testimony of officer Parker as to the sale itself, officer Donnelly as to the preliminary search of Parrish and Parker, and the chemist as to the chemical analysis, if believed by the trial court, coupled with the defendant's own admission that at the outset of their walk he stated to Parker that he would see if he could obtain some "dope" for Parker, was clearly sufficient to establish the defendant's guilt beyond a reasonable doubt. It was not necessary that Parker be corroborated as to the details of the sale itself, as we have held that a conviction can be based upon the testimony of a single credible witness. (*People* v. *Guido,* 25 Ill.2d 204.) The credibility of the witnesses in a case tried without a jury is a matter for the trial judge to determine and his judgment based thereon will not, unless clearly in error, be set aside. *People* v. *Mercado,* 26 Ill.2d 244.

The defendant's contention that his trial counsel was

incompetent is based primarily upon the attorney's alleged failure to follow instructions supposedly given to him by the defendant regarding certain witnesses the defendant wanted to be called, and the alleged failure of his attorney to interview certain witnesses prior to trial. These matters are not of record and now appear in this case for the first time in the defendant's brief on this appeal. Consequently they can not be considered by us. *People* v. *Neukom*, 16 Ill.2d 340.

The defendant also contends that his defense was inadequately presented because (1) the informer was not called as a witness; (2) no objection was made as to the introduction of the narcotics purchased or as to the leading form of certain of the State's Attorney's questions; (3) no request for a directed verdict at the close of the State's case was made; (4) the defense of entrapment was not raised; and (5) because an effective closing argument on his behalf was not made.

The defense counsel, rather than calling the informer, who was available, as a defense witness—an individual whom the defendant admittedly knew to be a dope addict and a police informer—elected to discredit, in his final argument and in his interrogation of officer Parker, the prosecution's case because of its failure to call the informer. This stratagem, although it proved to be ineffective, certainly cannot, in view of the witness involved and the police officer's statement that the informer could not have seen the actual sale, be said to be incompetent or even an error in judgment.

It was not error to fail to object to the admission of the narcotics involved in this sale once the State had established the necessary foundation as set forth in the *Norman* case discussed above. The record discloses that certain leading questions were asked by the prosecutor that were not objected to. However, in the pressure of a trial this is understandable and under the circumstances could not have de-

prived the defendant of adequate representation, particularly where the trial is before the court and not a jury. The critical testimony of officer Parker as to the purchase itself was in a narrative rather than leading form. The record discloses that defense counsel made objections to other improper questions and to certain unresponsive answers and that the defendant's rights were adequately protected throughout the trial.

The defense of entrapment considered "patently obvious" to appellate counsel was, in view of defendant's unequivocal denial of the facts constituting the offense charged, clearly not available. (*People* v. *Johnson*, 24 Ill. 2d 195.) The testimony of the State's witnesses discloses that the defendant took the initiative throughout the sale, that he approached Parker and Parrish and suggested that they walk along with him. As we have repeatedly held, the providing of an opportunity for the commission of a crime by one already so predisposed does not constitute entrapment. The actions of law enforcement officials here were much more passive than those involved in the recent case of *People* v. *Lewis*, 26 Ill.2d 543 and *People* v. *Hall*, 25 Ill.2d 297, where we held that the artifice there employed did not constitute entrapment.

The defendant's trial counsel's final argument immediately followed the presentation of the testimony in this one-day trial. Although brief, this argument emphasized the alleged weaknesses in the State's case, including the failure to call the police department's own informer. The defense as a whole was ineffective only in the sense that the trial judge chose to believe the police officers rather than the defendant. In view of these officers' unequivocal testimony, and the defendant's own admission that he, Parker, and the informer set out walking at the defendant's suggestion so that he could see if he could come up with some narcotics for Parker, the trial court could not reasonably have found otherwise. Certainly it does not appear that anything that

the defense counsel did or failed to do would have affected the outcome of the case. Incompetency of counsel was not, therefore, established. *People* v. *Morris,* 3 Ill.2d 437.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*