. THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HENRY WINTERS, Defendant-Appellant.

First District (3rd Division)    No. 79-388

Opinion filed June 10, 1981.

Annette A. Eckert, of Murphy, Putnick, Peters & Davis, Ltd., of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Kathleen Warnick, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

Following a jury trial Henry Winters, the defendant, was convicted of murder and was sentenced to the Illinois Department of Corrections for a term of 40 to 60 years. On appeal the defendant argues that he was denied a fair trial due to the admission of eight objects into evidence without proper foundations. The objects were a .38-caliber revolver, wooden slug, a spent cartridge, a key case and keys, a guard log book and time sheets and a vial of blood allegedly taken from the murder victim.

■■ A proper foundation for the introduction of an object into evidence may be laid either through identification of the object by a witness or through the establishment of a chain of possession. Both proofs are not required. (*People v. Greer* (1963), 28 Ill. 2d 107, 190 N.E.2d 742; *People v. Mendoza* (1978), 62 Ill. App. 3d 774, 379 N.E.2d 380.) The character of the object will determine which foundation is required. If the object possesses characteristics that are fairly unique and readily identifiable and if it is impervious to change, the object can be admitted merely on the basis of unimpeached testimony that the item is the one in question and is in a substantially unchanged condition. (*People v. Gilbert* (1978), 58 Ill. App. 3d 387, 374 N.E.2d 739; *In re Rivera* (1977), 46 Ill. App. 3d 515, 361 N.E.2d 84.) A chain of custody foundation is required when the offered evidence

is not readily identifiable or is susceptible to alteration by tampering or contamination. The chain of custody must be of sufficient completeness to render it improbable that the item has either been exchanged with another or contaminated or tampered with. *People v. Cole* (1975), 29 Ill. App. 3d 369, 329 N.E.2d 880.

Since the trial court's discretionary ruling on the admissibility of evidence and the sufficiency of identification is subject to reversal only for an abuse of discretion (*People v. Mendoza; In re Rivera*), we will examine the evidentiary foundations for the items admitted in the instant case to determine whether an abuse of discretion occurred.

### Guard Log Book and Time Sheets

Ronald Steiner, a witness for the prosecution, testified that he was employed with Burns International Security Services, Inc. (Burns Security), and that on September 4, 1976, he was assigned to work at the Dietzen Corporation Building, an abandoned warehouse located at 1000 West Fullerton in Chicago, Illinois. He had worked the noon to midnight shift and was relieved at 12 a.m., on September 5, 1976, by John Fogli, the murder victim, and Henry Winters, the defendant. Steiner left the warehouse at approximately 12:07 a.m. He testified that he saw the defendant fill out the guard log book which was located on a desk near the main entrance doors. He identified People's Exhibit No. 7 as the guard log book that was signed by the defendant, and said the names of the defendant and deceased were on People's Exhibits Nos. 8 and 9, two time sheets. On cross-examination, Steiner admitted he was not the keeper of the log book or records and stated that he did not sign the book on September 4 or 5, 1976.

John Schulz, a captain at Burns Security, testified that he went to the Dietzen Building on September 5, 1976, and found the body of John Fogli. When he entered the building he saw the Burns log book and the Burns time sheets on top of a desk. Schulz admitted on cross-examination that he was not the keeper of the log book or records for Burns Security and had not initialed or marked the exhibits. He said Exhibit No. 7 was the official log book for 1000 West Fullerton.

Chicago Police Officer Lee Epplen testified that he was assigned to investigate the homicide. He identified People's Exhibit No. 7 as the guard log book he found laying on top of the desk in the foyer of the warehouse on September 5, 1976. He said he put his initials on the lower right-hand corner of the first page and said the log was in the same condition as when he had taken it off the desk.

■■ The defendant objects to the admission into evidence of the guard log book and the time sheets because the State failed to show a continuous chain of possession. The log book and time sheets were properly admitted

based on a foundation laid through the positive and unequivocal identification testimony of witnesses Steiner, Schulz and Epplen. The log book and time sheets were unique and readily identifiable because they contained entries and information peculiar to Burns Security and the warehouse at 1000 West Fullerton. Therefore, the chain of possession was not necessary.

The defendant also argues that error was committed when the prosecutor stated in closing argument that the signatures in the log book belonged to the defendant and the victim. There was no testimony in this regard and the signatures had not been authenticated. The State argues that the defendant waived this issue on appeal because he did not object to the comments when they were made.

■■ The record discloses that the prosecutor did refer to handwritten entries made by the defendant and the victim. He stated that the Burns Security records showed that John Fogli received a .38-caliber revolver and that the defendant had signed himself out at 8:30 and at 9:30 on two different sheets. The defendant did not object to the former comment and has, therefore, waived any error in that regard. (*People v. Pearson* (1972), 52 Ill. 2d 260, 287 N.E.2d 715; *People v. Williams* (1980), 85 Ill. App. 3d 850, 407 N.E.2d 608.) The defendant did object to the reference to the conflicting times the defendant signed out of work, but we cannot say that the comment was improper. The State is permitted to comment on all facts which have been properly admitted into evidence and may draw all reasonable inferences from those facts. (*People v. Dominique* (1980), 86 Ill. App. 3d 794, 408 N.E.2d 280.) While there was no testimony that the handwriting or signatures in the Burns Security log book or on the time sheets belonged to the defendant, we believe that one can reasonably infer from the evidence that the defendant in the regular course of business and in accordance with Burns Security practices had made the entries alleged. Since the documents were properly admitted into evidence, the weight and credibility to be given to the information stated therein was for the jury to decide. *People v. Lewis* (1977), 52 Ill. App. 3d 477, 367 N.E.2d 710.

Even assuming, however, that the prosecutor's comment was not supported by the evidence presented at trial, this error would have been harmless, because we cannot say it was a material factor in the defendant's conviction. *People v. Fields* (1974), 59 Ill. 2d 516, 322 N.E.2d 33, *cert. denied* (1975), 423 U.S. 843, 46 L. Ed. 2d 65, 96 S. Ct. 80; *People v. Hawkins* (1980), 88 Ill. App. 3d 178, 410 N.E.2d 309; *People v. Calderon* (1980), 85 Ill. App. 3d 1030, 407 N.E.2d 840.

*Revolver, Wooden Slug and Spent Cartridge*
Ronald Steiner identified a .38-caliber revolver, People's Exhibit No.

10, as the weapon belonging to Burns Security that was assigned to the guards at the warehouse. The last time he saw the gun was on September 5, 1976, when he showed it to the victim while the defendant was sitting at the desk filling out the guard log book. Steiner also identified a wooden slug, People's Exhibit No. 11, and testified that he had seen the object in the chamber of the revolver when the weapon and five bullets were transferred to the victim.

Edward Funchess testified that on September 5, 1976, he was a manager of the Alex Theatre located at 2836 West Madison in Chicago, Illinois. At about 1:20 p.m. he saw the defendant with a gun walking across the street. The defendant pointed the gun at a passenger in a cab and then at two young men who were directed by the defendant into the theatre. When the defendant pointed his gun at Funchess, another theatre manager grappled with the defendant and helped Funchess wrestle the gun from the defendant. The chamber of the gun contained a blank shell made of wood, identified as People's Exhibit No. 11. Funchess also identified People's Exhibit No. 15 as being the cracked shell that he saw in the gun. The gun was given to the police officers who arrived shortly after the scuffle. On cross-examination, Funchess said he did not put any identifying marks on the gun or shell casing.

Police Officer Andre Miller testified that he went to the Alex Theatre on September 5, 1976, at approximately 1:20 p.m. He saw the defendant and two persons struggling. When he entered the theatre lobby, Edward Funchess gave him a revolver. Miller arrested the defendant and later signed a property inventory sheet which listed a .38-caliber revolver, with serial number 853676, a spent .38-caliber cartridge and a wooden dummy slug. At trial Miller examined People's Exhibit No. 10 and identified it as the .38-caliber revolver, serial number 853676, listed on the inventory sheet. People's Exhibit No. 15, the cracked spent cartridge, and People's Exhibit No. 11, a wooden slug, were also identified by Miller as being in the cylinder of the revolver when it was inventoried. On cross-examination, Officer Miller stated that he did not put any identifying marks on the wooden slug or shell casing.

Police Officer Donald Gunnell, of the Criminalistics Division, reviewed People's Exhibit No. 10 and stated it was a .38-caliber Smith and Wesson revolver. He stated the chamber in the gun was unusual because it had been drilled or reamed out so that a .38 special caliber cartridge, which is larger than a .38 Smith and Wesson caliber cartridge, could be inserted. Gunnell stated that quite a few weapons have been modified in that manner to take .38 special cartridges. He identified People's Exhibit No. 15 as a .38 special caliber discharged cartridge case with ruptured walls.

The defendant argues that the revolver, wooden slug and spent

cartridge were improperly admitted into evidence because the State failed to show a continuous chain of possession. In particular, the defendant argues that the State failed to elicit testimony as to what occurred to the evidence after it was inventoried at the police station.

As stated above, Illinois case law provides that a foundation may be laid either through the establishment of a chain of possession or through identification testimony by a witness. The State contends that the objects were properly admitted on the basis of sight identification and argues that *People v. Bob* (1976), 36 Ill. App. 3d 211, 343 N.E.2d 652, presents an analogous situation. In *Bob* the defendant argued that a shotgun was erroneously admitted into evidence because the State failed to establish a complete chain of custody from the time of its recovery until trial. The court held that the gun was properly admitted based on the positive identification of the shotgun by the victim, who testified that the gun was very old and unusual looking, and by the police officer, who testified that the serial number on the gun matched the serial number listed in the police report.

In the instant case, we believe the .38-caliber revolver was properly admitted into evidence since it was identified by its serial number and by the fact that the chamber of the gun had been reamed or drilled out. (*People v. Bob*; see also *People v. Gilbert* (1978), 58 Ill. App. 3d 387, 374 N.E.2d 739.) The wooden slug and spent cartridge were improperly admitted into evidence, however, because a chain of possession had not been established and because they were incapable of being positively identified due to a lack of any unique characteristics or identifying marks placed upon them. While Edward Funchess testified that the wooden slug and cartridge were in the revolver when he took the gun from the defendant, and Officer Miller testified that the slug and cartridge were in the gun when it was inventoried, the items were presented separately at trial. The slug and cartridge had not been tagged by the officer or his partner at the time they were inventoried. There was no testimony as to how and when the items became separated from the revolver and where they were kept until the time of trial. Thus, the items could not have been positively identified and the chain of possession was inadequate. *People v. Gilbert*.

### Key Case and Keys

Thomas Fogli, the brother of the victim, testified that John Fogli had two cars, a 1973 Ford LTD and a 1967 Pontiac station wagon. The victim took the station wagon to work.

Police Officer Andre Miller, the arresting officer, testified that he was with the defendant in the interview room of the 11th district police station when the defendant emptied out his pockets on a table. A brown leather

key case, containing two sets of car keys and some other keys, was among the defendant's belongings. Miller gave the keys to the lockup keeper when he took the defendant to the lockup. People's Exhibit No. 21 was identified as a dark brown key case containing five keys, one set of Ford car keys, one General Motors car key and two other keys. Miller stated that he did not inventory the keys or make any identifying marks on them. He testified that People's Exhibit No. 21 was similar to the case and keys he had seen previously but could not say for certain that they were the exact case and keys.

Police Officer Lee Epplen, the Area 6 officer assigned to investigate the homicide, testified that he went to the 11th district police station to have the defendant transferred to Area 6. He recovered a key case containing five keys from the defendant. Epplen identified People's Exhibit No. 21 as the keys he had taken from the defendant and used to open the door of a 1967 Pontiac car, which had been owned by the victim, located at 3901 West Madison. He stated the General Motors key appeared to be the key that he used to open the car door. On cross-examination Epplen admitted that he did not put any marks or notations on the leather key case. He also stated that the Ford and General Motors markings on the keys were not different from any other Ford or General Motors keys.

■■ On the basis of the testimony discussed above, the key case and keys were admitted into evidence. The defendant contends that these items were not readily identifiable or unusual so that the foundation based on identification testimony was insufficient. We agree and further find that the identifications by Officers Miller and Epplen were not positive since both testified that the keys and key case were not distinguishable from others of like kind and since both men admitted that neither identifying marks nor notations had been placed on the items at the time they were recovered from the defendant. Miller's identification was especially weak because he admitted that he could not say for certain that People's Exhibit No. 21 was the exact key case and keys he had seen on the day the defendant was arrested. Since the identifications were not positive, the foundation was inadequate and the key case and keys should not have been admitted into evidence.

*Vial of Blood*

Doctor Yuksel Konaki, of the Cook County Medical Examiner's office, testified that he examined John Fogli's body on September 6, 1976. He took a sample of blood and removed a bullet from the deceased's body. Doctor Konaki identified People's Exhibit No. 28 as the vial which contained the victim's blood. The vial had a label containing the victim's name, date, the doctor's initials and a case number. He said the label

appeared the same as when he submitted the vial except that an additional number and signature appeared on it.

George Spreyne, a microanalyst for the Chicago Crime Laboratory, identified People's Exhibit No. 28 as a vial of blood he received from the Cook County Medical Examiner's office. He testified that the tag on the bottle contained a case number that he assigned to it and his initials as well as the medical examiner's number and the name of the victim. Spreyne stated that the bottle was in substantially the same condition as when he received it from the medical examiner's office except that it contained a lesser amount of fluid. On cross-examination, Spreyne stated that the vial of blood was not sealed when he received it and that although the victim's name appeared on the bottle in someone else's handwriting, he did not positively know whose blood was in the bottle.

The defendant argues that the vial of blood was erroneously admitted into evidence since a continuous chain of its possession was not established. He contends that the absence of proof of chain of custody brings into question the possibility of tampering or substitution. The State maintains that the vial of blood was properly admitted into evidence based on the credible and positive testimony of Doctor Konaki and George Spreyne and contends that there is no evidence to support the proposition that the blood had been tampered with.

When the offered evidence is of such a nature as not to be readily identifiable or is susceptible to alteration by tampering or contamination, a foundation more elaborate than identification testimony may be required. Such instances require tracing the chain of custody with sufficient completeness to render the possibility of exchange, contamination or tampering improbable. *People v. Cole* (1975), 29 Ill. App. 3d 369, 329 N.E.2d 880; McCormick, Evidence §212, at 527-28 (2d ed. 1972).

A sufficient chain of custody does not require that every person involved in the chain testify at trial (*People v. Cain* (1966), 35 Ill. 2d 184, 220 N.E.2d 195, *cert. denied* (1967), 385 U.S. 1042, 17 L. Ed. 2d 686, 87 S. Ct. 781; *People v. Anthony* (1963), 28 Ill. 2d 65, 190 N.E.2d 837), nor is the State required to exclude all possibility that the article may have been tampered with (*People v. Lewis*). In *People v. Richards* (1970), 120 Ill. App. 2d 313, 256 N.E.2d 475, a case cited by the State, a blood sample was admitted into evidence even though it was left in a hospital freezer for 17 days without testimony that the freezer was locked, secured or accessible only to authorized personnel. Since the defendant did not suggest that tampering or alteration had occurred, the court held that the chain of custody was sufficiently proved and that the blood sample was properly admitted. We note, however, that in *Richards* there was evidence that the blood sample had been properly sealed from the time it was drawn by the pathologist and held in the hospital freezer until the time it was taken to

the chemist and analyzed. This proof of proper sealing was an important factor in the court's decision. See *People v. Marquis* (1974), 24 Ill. App. 3d 653, 321 N.E.2d 480; accord, *People v. Anthony* (evidence properly sealed in envelope); *People v. Norman* (1962), 24 Ill. 2d 403, 182 N.E.2d 188, *cert. denied* (1962), 371 U.S. 849, 9 L. Ed. 2d 85, 83 S. Ct. 86, (unsealed packet of narcotics inadmissible); *People v. Brown* (1972), 3 Ill. App. 3d 879, 279 N.E.2d 382 (bottle of whiskey inadmissible when never inventoried or sealed).

■■ Unlike *Richards*, evidence in the case at bar established that the vial of blood was not sealed when the microanalyst received it and there was no testimony from Doctor Konaki that the vial had been sealed after the blood sample was placed in it. Since the blood sample was not sealed, we cannot say that in all reasonable probability the evidence had not been changed in any important respect. (*People v. Lewis* (1977), 52 Ill. App. 3d 477, 367 N.E.2d 710.) Therefore, the vial of blood and testimony regarding its testing and analysis were inadmissible. *People v. Norman.*

To conclude, the wooden slug, spent cartridge, key case and keys, and vial of blood were erroneously admitted into evidence due to inadequate foundations. We hold, however, that a new trial is not required, because there was other convincing and overwhelming evidence upon which to convict the defendant.

■■ On the day of the murder the defendant was placed at the scene of the crime, that showed no signs of forced entry. Ballistic tests proved that a fired bullet found under the victim's body was fired from People's Exhibit No. 10, the revolver belonging to Burns Security that had been at the warehouse prior to the murder. Testimony indicated that the defendant had possession of the revolver at the time of his arrest on the day of the murder. Therefore, in reliance on this other competent and independent evidence, which establishes the defendant's guilt beyond a reasonable doubt, we conclude the improper admission of evidence was harmless error. See *People v. Williams* (1980), 85 Ill. App. 3d 850, 407 N.E.2d 608.

For the foregoing reasons the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

RIZZI, P. J., and McNAMARA, J., concur.