GREGORY WILLIAMSON, Plaintiff-Appellee, v. THE POLICE BOARD OF THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 1—88—3544

Opinion filed April 18, 1989.

---

*Judge Egan participated in the decision of this case prior to becoming a member of the sixth division.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Nina Puglia, Assistant Corporation Counsel, of counsel), for appellant.

Law Offices of Joseph V. Roddy, of Chicago (Joseph V. Roddy and Thomas J. Pleines, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Defendant appeals from an order reversing a Chicago police board decision discharging plaintiff from the police department, arguing that the trial court abused its discretion in finding that defendant had failed to establish a sufficient chain of custody.

On February 6, 1986, Luana Gooden, plaintiff's girlfriend, called the Chicago police department and reported that plaintiff smoked marijuana both on and off duty. The next day, after talking with plaintiff, she attempted to withdraw her complaint. On February 13, 1986, after speaking with plaintiff again and under his direction, she spoke with Sergeant Hovland at Internal Affairs and told him that she laced plaintiff's tea with marijuana. Upon being told that she could be charged with aggravated battery, Gooden recanted her account regarding the tea. On February 19, 1986, Gooden returned to Internal Affairs and told Hovland that on February 14 plaintiff had come to her home and threatened her with a gun in an attempt to get her to sign a letter retracting her complaint against him. She also claimed that on February 18 plaintiff had come to her home and that while she sat outside in his car with him, he had tried to choke her for her refusal to sign an affidavit saying that she put marijuana in his tea. On cross-examination, she admitted that she had lied when she said that plaintiff had threatened her with a gun.

Internal Affairs investigated Gooden's allegation of drug abuse, and on February 11, 1986, police agent Wallace contacted plaintiff at his district. Plaintiff, Wallace and Hovland reported to the medical service section, where plaintiff was given a "Notification of Charges/Allegations" form. Officer Victor Miktal, who was sitting behind a desk in the laboratory, took a plastic cup from a sleeve of plastic cups, marked it with the next available drug screen number, gave it to plaintiff and directed him to the washroom. Hovland and Wallace watched as plaintiff urinated into the cup. Plaintiff then carried the cup to Miktal's desk and, while plaintiff sat in a chair adjacent to the desk, Miktal poured the contents of the cup into a prenumbered, labelled bottle, which he sealed with red evidence tape.

Plaintiff then completed part I of a drug screen specimen affidavit, in which he swore that on February 11, 1986, at 11:36, he urinated into a cup with the number 1159 written on its side; that he gave the cup to Miktal; that he watched Miktal pour the contents of the cup into a bottle with the number DS861159 printed on its side, close the top with a cap numbered 1159, and seal the bottle across the cap and down both sides with red evidence tape. Miktal, Hovland and Wallace all swore to witnessing the same thing. Later, at the police board hearing plaintiff denied watching Miktal seal the bottle.

Miktal placed the sealed bottle in the medical services section refrigerator, to which only two officers and their supervisor had access. Miktal then completed part II of the drug screen specimen affidavit, swearing that he placed specimen number DS861159 in the refrigera-

tor at 11:40. At 1 p.m., Miktal watched Sergeant Laffey take plaintiff's specimen from the refrigerator. Part III of the drug screen specimen affidavit bears the signature "T. Laffey," attesting to the fact that he removed specimen number DS861159 to the American Institute of Drug Detection (hereinafter AIDD).

Vicky Zarazinski, who is responsible for keeping records of incoming drug test requisitions at AIDD, testified regarding the drug test requisition form for specimen number DS861159. The purpose of the form is to record when a specimen bottle is received, its condition and whether there were any irregularities with the incoming specimen. It also provides a matching accession number, which is used to identify the specimen. Specimen number DS861159 was given accession number DD-26345. There were no irregularities recorded on the requisition form. Zarazinski placed the requisition form in a locked filing cabinet, the keys to which only she, the president of AIDD and the laboratory supervisor had.

James Walsh testified that he took the specimen out of a locked refrigerator at AIDD and checked to ensure that the seal was intact. He then broke the seal, and when he ran an EMIT test on the urine for the presence of drugs, the sample tested positive for THC, the active component of marijuana. He marked the lid with the accession number and noted on the bottle that the sample was presumptively positive, and then put the specimen into a box which would be put into a locked refrigerator for later confirmation of the positive result. On cross-examination, he stated that he did not know who sealed the specimen or who originally put the specimen in the refrigerator. He also stated that there had been occasions when the test equipment reported false positives.

Joyce Mah, the only other person to have access to the refrigerator, performed a gas chromatography mass spectrometry which confirmed that the specimen was positive for marijuana. She then placed the sample in a locked, frozen storage. when she took the specimen from the refrigerator the bottle was not sealed and she did not know if anyone had tampered with it; however, she testified that there was "very limited access" to the refrigerator and she did not see anyone tamper with the specimen.

Police Superintendent LeRoy Martin filed charges against plaintiff with the Chicago police board for violating the following rules:

> Rule 1—Violation of any law or ordinance.
>
> Rule 2—Any action or conduct which impedes the department's efforts to achieve its policy and goals, or brings discredit upon the department.

Rule 6—Disobedience of an order or directive, whether written or oral.

Rule 8—Disrespect to or maltreatment of any person, while on duty or off.

Rule 9—Engaging in any unjustified verbal or physical altercation with any person, while on or off duty.

Rule 14—Making false report, written or oral.

Rule 38—Unlawful or unnecessary use or display of a weapon.

On March 11, and April 7, 1988, a hearing was conducted before a hearing officer of the Chicago police board, and plaintiff was found not guilty of attempting to bribe, threaten, mistreat, or physically, verbally, or with a handgun assault Gooden. He was found guilty of Rules 1, 2 and 6 for submitting a urine specimen which evidenced use of marijuana. Plaintiff was discharged from the police department on May 23, 1988.

On June 27, 1988, plaintiff filed a complaint in administrative review in the circuit court, and on November 3, 1988, the trial court found that the chain of custody was insufficient, stating:

"Reversed, contrary to the manifest weight of the evidence, contrary to the law. I am astounded that the champion of civil rights of the Corporation Counsel would permit this kind of testimony to be used in this fashion to destroy the career of a distinguished police officer. There is an accommodation of a commendations contained in the record [*sic*].

The objection that the Court has is the objection that was pointed out. There is no question that Officer Williamson's urine sample was placed in a secure ice box, if you will, in the evidence recovered property section of the police department. There is equally no question that a bottle bearing the same identification number was taken from a secured ice box in the testing laboratory, and that this test result was positive, but the means or method by which the bottle was transported some distance from the police evidence and recovered property department to the testing laboratory is totally unexplained except with hearsay evidence.

Officer Laffey whose duty apparently it was to transport these items was not present, did not testify, nor was his absence satisfactorily explained so that bottle A within the police department and a bottle labeled A arrived in the testing lab. No one knows how. That kind of evidence would not be sufficient to convict in a criminal case, and in this particular case,

while I recognize the burden of proof is different, I do not believe that type of evidence should be used to destroy a hither to an [*sic*] unblemished record and career of a police officer."

On December 13, 1988, the trial court ordered that plaintiff be reinstated with back pay and benefits. Defendant now appeals.

OPINION

■ Defendant argues that the trial court erred in reversing the police board's decision, maintaining that it sufficiently established a chain of custody of plaintiff's urine. Plaintiff contends the chain is incomplete because Officer Laffey, the individual who transported the specimen to AIDD, did not testify, and therefore, there was no evidence that the seal was not tampered with during the time period that Laffey had control over it. He emphasizes that Walsh did not know who had sealed the specimen or put it in the AIDD refrigerator. Plaintiff also questions how Laffey was able to take the specimen out of the medical service section refrigerator if, as Miktal testified, only a few people have access to it; however, since plaintiff did not question Miktal on this point during the hearing, this court is not the proper forum in which to raise a new fact question.

■ Plaintiff also contends that there is confusion as to what number the specimen was identified by at AIDD. The requisition form indicates that the specimen was given accession number 26345 and it is listed under that number in the report of test results, but at the hearing the bottle had the number 26355 imprinted on it. This discrepancy was not investigated by defense counsel at the hearing, and, although plaintiff made a general objection to the chain of custody, he did not bring to the hearing officer's attention the fact that the specimen had apparently been given two different numbers, nor did he argue that the chain of custody was insufficient as a result; therefore, plaintiff has waived this issue for review. We note, however, that at the hearing Officer Miktal identified the bottle as that in which he poured defendant's urine at the medical service section; thus, there is no question but that the defendant's specimen was given the number under which the test results appear. Therefore, although there are two numbers, it is clear to us that defendant's specimen was correctly identified throughout the testing process.

■ It is necessary to establish a chain of custody where an object sought to be admitted has no distinguishing characteristics. (*People v. Stevenson* (1980), 90 Ill. App. 3d 903, 908, 413 N.E.2d 1339.) The chain of custody must be of sufficient completeness "to render it improbable that the item has either been exchanged with another or

contaminated or tampered with" (*People v. Winters* (1981), 97 Ill. App. 3d 288, 290, 422 N.E.2d 972, *cert. denied* (1982), 455 U.S. 923, 71 L. Ed. 2d 464, 102 S. Ct. 1282), and a trial court's ruling on the sufficiency of a chain of custody is subject to reversal only for an abuse of discretion (*Winters*, 97 Ill. App. 3d at 290). A sufficient chain of custody does not require that every person involved in the chain testify at trial, nor is the State required to exclude all possibility that the article may have been tampered with (*Winters*, 97 Ill. App. 3d at 294-96), and in the absence of any tangible suggestion of tampering, alteration or substitution, it is sufficient to prove a reasonable probability that the article has not been changed in any important respect. (*People v. Madden* (1978), 57 Ill. App. 3d 107, 111, 372 N.E.2d 851; see also *People v. Tribett* (1981), 98 Ill. App. 3d 663, 674, 424 N.E.2d 688.) In brief, the State must show that reasonable protective measures were taken to ensure that the substance taken from defendant was the same substance tested in the laboratory (*People v. Ryan* (1984), 129 Ill. App. 3d 915, 919, 473 N.E.2d 461), and mere speculation that the article has been altered is not enough to undermine the adequacy of the chain of custody. *People v. Rhoades* (1979), 74 Ill. App. 3d 247, 253, 392 N.E.2d 923; see also *People v. Ryan*, 129 Ill. App. 3d at 919.

In *Tribett*, defendant argued that the State had failed to establish a continuous chain of possession between the substance seized by the arresting officers and the substance analyzed by the police department chemist. At trial, Officer Fraser testified that he watched Officer O'Grady place a packet containing brown powder in an evidence envelope, sign the envelope and place tape over his signature.

> "O'Grady then left the room to give the evidence to the desk sergeant who, as a matter of procedure, would place the evidence into the safe until it could be transported to the crime lab. Although O'Grady was deceased at the time of trial and therefore unable to testify that he had given the evidence envelope to the desk sergeant, Fraser identified O'Grady's signature as the signature on the evidence envelope and noted that the scotch tape was still intact. Fraser also identified the brown substance which defendant dropped on the night of June 21, 1977. Additionally, the police chemist testified that she received the evidence envelope on June 29, 1977, for analysis. She also testified the she received the envelope in the same sealed condition \*\*\*. \*\*\*

Defendant \*\*\* argues that because the State failed to account for the period between the time O'Grady left Fraser's

sight with the sealed envelope on June 21, 1977, and June 29, 1977, when the police department chemist testified that she first saw the envelope, that it failed to prove beyond a reasonable doubt that the substance seized was the substance analyzed by the chemist. However, *Woessner* [*People v. Woessner* (1971), 132 Ill. App. 2d 58, 268 N.E.2d 508) is distinguishable. There the police testified that the contraband was kept unsealed for five days and that he did not initial, seal or secure the contraband in the vault which was available. Here, the officers placed the packet in question into an evidence bag, sealed it, signed it, and placed tape over the signature. The chemist testified that she received the evidence in that same condition." (*Tribett*, 98 Ill. App. 3d at 674.)

The court held that since there was no suggestion that the substance was altered, substituted or tampered with, the State had sufficiently established a proper foundation for its introduction into evidence. 98 Ill. App. 3d at 675.

In *People v. Anthony* (1963), 28 Ill. 2d 65, 190 N.E.2d 837, the court upheld the chain of custody, stating:

"The defendant contends that because there was no direct testimony from the man in the crime laboratory who actually received the sealed envelope from [O]fficer Parker and placed it into a locked cabinet that the chain of possession was broken and the State's foundation insufficient. *** The record here discloses that the narcotics were taken from the defendant, placed in a sealed envelope and brought by Parker to the crime laboratory. Before delivering the envelope Parker wrote his name on the back flap of the envelope and covered the same with cellophane tape. The chemist who examined the narcotics found the envelope in the same sealed condition with no suggestion of tampering, alteration or substitution. In our opinion the techniques employed were sufficient to make admissible the testimony as to the result of the chemical analysis." 28 Ill. 2d at 68-69.

The court also upheld the chain of custody in *Ritenour v. Police Board* (1977), 53 Ill. App. 3d 877, 369 N.E.2d 135, stating:

"After the particles fell from the alley lamp, they were picked up by the two men from the Bureau of Electricity, who handed them to Sergeant Dorff. He then took them to the police crime lab. There, Dorff placed them in a brown envelope, which he sealed and then initialled and dated the envelope flap—following which he placed cellophane tape over the flap. He then

gave the sealed envelope to Officer Charnow, a lab technician, who gave him an investory [*sic*] receipt. Sergeant Smith stated he was given the sealed envelope the next day by Charnow and placed it in an evidence retention drawer, where it remained until opened by him to conduct his analysis, at which time Smith said it showed no signs of tampering.

Plaintiff argues that because there was no direct testimony from Officer Charnow, who accepted the fragments from Dorff, the chain of possession was broken ***. He cites no supporting authority, and we find that case law is to the contrary." 53 Ill. App. 3d at 880-81.

Illinois courts have held the chain of custody insufficient when a specimen was not inventoried, sealed or put in a secure place. *People v. Slaughter* (1986), 149 Ill. App. 3d 183, 500 N.E.2d 662; *People v. Winters* (1981), 97 Ill. App. 3d 288, 422 N.E.2d 972, *cert. denied* (1982), 455 U.S. 923, 71 L. Ed. 2d 464, 102 S. Ct. 1282; *People v. Brown* (1972), 3 Ill. App. 3d 879, 279 N.E.2d 382.

Here, Miktal, Hovland and Wallace all testified that the specimen bottle was sealed and put into a locked refrigerator at the police laboratory, and Walsh testified that the bottle was sealed when he removed it from the AIDD refrigerator. Moreover, there is no indication on the requisition form that there were any irregularities with the sample, such as a broken seal, when it was received at AIDD. As noted above, defendant is not required to call all those who came into contact with the specimen to testify (*People v. Winters*, 97 Ill. App. 3d 288, 422 N.E.2d 972); thus Laffey's absence did not break the chain of custody. Plaintiff only speculates that the specimen was somehow tampered with, but, in the absence of a tangible suggestion of alteration, it is sufficient for defendant to demonstrate, as it has done here, that it took reasonable steps to ensure that the specimen was not changed in any important respect. *People v. Rhoades* (1979), 74 Ill. App. 3d 247, 392 N.E.2d 923.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

BILANDIC, P.J., and HARTMAN, J., concur.