THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL KABALA, Defendant-Appellant.

First District (5th Division)   No. 1—90—2163

Opinion filed February 7, 1992.

Harry A. Schroeder, of Flossmoor, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael Latz, and Daniel Rabinovitz, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Defendant, Michael Kabala, was charged with possession of child pornography in violation of section 11—20.1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 11—20.1). After a jury trial, defendant was convicted and sentenced to 30 months' probation and fined $1,000. Defendant appealed. We consider whether the State established a sufficient foundation to support the trial court's admission of an eight-millimeter film into evidence.

We reverse and remand for a new trial.

Relevant to our disposition are the following facts as disclosed by the record. On June 16, 1987, special agents of the United States Customs Service office (Customs) executed a search warrant at a house located at 15450 South Lawndale, Markham, Illinois. Defendant resided at the house, but he did not own the house. The special agents recovered a loose piece of eight-millimeter film and five groups of photographs. Both the film and the photographs depicted material commonly characterized as child pornography.

Criminal proceedings were initiated against defendant both in the State and Federal courts. The charges in the Federal court involved only the photographs which defendant had received through

interstate commerce; defendant pleaded guilty and was sentenced by the Federal court. Subsequently in the State court, defendant was charged with 11 counts involving the photographs and charged with two counts involving the eight-millimeter film. Defendant moved to dismiss each of the State's counts based on the principles of double jeopardy. The trial court granted defendant's motion. The State appealed only the dismissal of the two counts involving the eight-millimeter film. The appellate court entered an order (*People v. Kabala* (1st Dist. 1989), No. 1—88—2572 (unpublished order under Supreme Court Rule 23)) reversing the dismissal of the two counts and the cause was remanded to the trial court for further proceedings.

Prior to the ensuing trial, defendant moved to exclude the photographs which were the basis of the Federal proceedings. The trial court granted the motion on two conditions: (1) the court would admit the photographs if defendant's knowledge as an element of his offense became an issue; and (2) the court would admit the photographs if defendant or defendant's counsel implied that the eight-millimeter film was the only item seized from defendant's residence.

Defendant also moved to exclude the title of the eight-millimeter film, "Pre-Teen Virgin," on the ground that it was inadmissible hearsay, and moved to exclude certain portions of the film which did not depict children in a sexually graphic manner. The court denied the motions to exclude the title of the film or any portion of the film.

At trial, the State called two witnesses, Tom Fischer and Jack O'Malley, both United States Customs agents. Fischer testified that he, several other agents, and various local police officers executed the search warrant at defendant's residence at 7:30 a.m. on June 16, 1987. During the search, Fischer saw one of the agents ascend from the downstairs area holding a piece of eight-millimeter film. Fischer was in the kitchen at the time talking with the evidence custodian for the search, Dennis Schlaka. Fischer testified that the film was a loose piece of eight-millimeter film between 20 to 30 feet in length; it was not wound on a reel. After Fischer suggested that the film be included in the evidence, he watched as Schlaka put the film into a large, white envelope. Schlaka initialed and dated the envelope. In court, Fischer identified the film and the envelope; both were introduced as State's exhibits. On cross-examination, Fischer testified that he did not view the film and he therefore did not know its contents.

Jack O'Malley testified that he was an agent supervisor at the time the search warrant was executed. The day prior to the search, O'Malley applied for the search warrant before a Federal magistrate. However, he was not present during the search of defendant's residence. At noon the day of the search, O'Malley was at the Customs office in Chicago. Another agent assigned to the case brought him the envelope with the film. O'Malley testified that he believed the film was between 10 to 25 feet long. O'Malley had the envelope and film put in the evidence room which was locked; only those authorized persons with the combination could access the evidence room. A year and one day later, O'Malley retrieved the envelope and film from the evidence room and took it to the United States Attorneys' office in Chicago. O'Malley viewed the film with the United States Attorneys assigned to the case in the Federal court.

Before O'Malley testified to the contents of the film, defendant objected on the ground that the State failed to establish a sufficient chain of custody for the film. After hearing arguments outside the presence of the jury, the trial court overruled the objection.

O'Malley then stated that the film was approximately two minutes in length. Portions of the film contained sexually graphic material involving a young girl in violation of several of the subparagraphs of paragraph (a)(1) of the Illinois child pornography statute. (Ill. Rev. Stat. 1987, ch. 38, par. 11—20.1(a)(1).) On cross-examination, O'Malley testified that he did not view the film when it was brought to him on the day of the search. He admitted that there were no identification markings on the film itself. He did not learn of the title of the film until he viewed it.

At this point, the trial court admitted the film into evidence. Defendant renewed his objection to the film's admission. The court indicated that it would research the issue and if it then determined the film was not admissible, a directed verdict would be entered in favor of the defendant. The film was published to the jury in the form of a VHS copy. It was stipulated that the contents of the VHS copy were identical to the eight-millimeter film. The State rested.

Defendant did not present any witnesses in his defense. However, the attorneys again argued the issue of the admissibility of the film. The trial court affirmed the admissibility thereby precluding a directed verdict in favor of defendant. The case was submitted to the jury, which found defendant guilty.

Defendant filed post-trial motions for judgment of acquittal and for a new trial. These motions renewed defendant's objection that

the State failed to establish a chain of custody for the film. The court denied both post-trial motions.

Defendant was sentenced to 30 months' probation with the first year to be served in the intensive probation department. Defendant was also fined $1,000. Defendant filed this appeal.

OPINION

Defendant raises several issues on appeal. We address only one: whether the State established a sufficient foundation for the trial court's admission of the eight-millimeter film into evidence. The eight-millimeter film was the only evidence supporting the State's charges. In the event the film was inadmissible, the defendant's conviction must be reversed.

■ A proper foundation for the introduction of physical evidence may be laid either through witness identification or through the establishment of a chain of custody. (*People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840.) Although both foundations are not required for any one item of evidence, the character of the evidence may determine which is required. (*People v. Winters* (1981), 97 Ill. App. 3d 288, 422 N.E.2d 972.) If the evidence is not readily identifiable or is susceptible to alteration by tampering, substitution, or contamination, the party must establish a chain of custody; in this event, the chain of custody must be of sufficient completeness to render it improbable that the evidence has been tampered with or substituted. *Winters*, 97 Ill. App. 3d 288, 422 N.E.2d 972.

■ Here, the evidence was a loose piece of standard eight-millimeter film. The film itself had no identification and there was no evidence of a film reel containing a label. Although the title and contents of the film may have provided a basis to identify the film, Fischer testified that he never viewed the film and O'Malley testified that he did not view the film until a year and a day after it was seized. Therefore, the film was not readily identifiable, and we determine that the State was required to establish a chain of custody in order to lay a proper foundation for the introduction of the film into evidence.

Our analysis of the State's chain of custody indicates that it was incomplete in several significant respects. We limit our discussion to the facts concerning the initial recovery of the film and the transfer of the film from defendant's residence to the Customs office.

Although Fischer testified that he was present during the search, he did not testify to facts concerning the actual recovery of

the film in the house. There was no testimony as to the film's precise location or condition in the house when it was recovered. Fischer merely testified that he watched another agent ascend from the basement area holding the film. However, neither Fischer nor anyone else involved in the State's case could recall the name of this agent; the identity of this person remains a mystery. We are aware that the establishment of a chain of custody does not require that every person involved in the chain testify. (*People v. Jones* (1986), 148 Ill. App. 3d 345, 499 N.E.2d 510.) However, we note that the absence of this agent's testimony raises doubt over facts connecting the film with defendant at the crucial moment when it was recovered from the house. We also note that the State was unable to explain the absence of the agent's testimony. See *People v. Coleman* (1980), 91 Ill. App. 3d 646, 415 N.E.2d 553 (State explained that the absence of testimony from two officers who actually recovered the evidence was due to the officers' annual furlough).

Fischer testified that he saw the evidence custodian for the search, Dennis Schlaka, place the film in an envelope and then date and initial the envelope. However, the film itself was not tagged or marked in any way and the envelope was not sealed. (See *Winters*, 97 Ill. App. 3d 288, 422 N.E.2d 972 (citing to a list of cases in which proper sealing was an important factor in the establishment of chain of custody).) Fischer stated he believed the film was between 20 to 30 feet long.

Next, the film was transferred to the Customs office in Chicago. O'Malley testified that he received the envelope and film from another agent at 12 p.m. However, the record does not reflect the identity of this agent or how this agent gained possession of the film from Schlaka. Therefore, there is another missing link in the chain of custody. We are aware that if a link in the chain is missing, but there is testimony describing the condition of the evidence when delivered which matches the description of the evidence when received, the testimony is sufficient to establish a chain of custody. (*People v. Irpino* (1984), 122 Ill. App. 3d 767, 461 N.E.2d 999.) Here, however, O'Malley's description of the film as between 10 to 25 feet long does not match Fischer's description of the film as between 20 to 30 feet long.

It is true that the propriety of admitting physical evidence rests primarily within the discretion of the trial judge, and the exercise of that discretion will not be disturbed absent an abuse which prejudices the defendant. (*People v. Schubert* (1984), 136 Ill. App. 3d

348, 483 N.E.2d 600.) However, it is also true that courts have generally applied stricter evidentiary standards in criminal cases. (M. Graham, Cleary & Graham's, Handbook of Illinois Evidence §901.2, at 629 (4th ed. 1984).) In light of the above, we cannot determine that the State established a chain of custody of sufficient completeness to render it improbable that the film had been substituted or tampered with. Therefore, we hold that the trial court abused its discretion admitting the film into evidence.

Reversed and remanded for a new trial.

MURRAY and GORDON, JJ., concur.