THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BLAIR R. TAYLOR, Defendant-Appellant.

Third District   No. 3—99—0081

Opinion filed June 22, 2000.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Dawn D. Duffy, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Defendant, Blair R. Taylor, was convicted of aggravated criminal sexual abuse. 720 ILCS 5/12—16(d) (West 1994). He appeals, claiming that: (1) he was not proven guilty beyond a reasonable doubt; (2) the court erred in allowing testimony regarding the contents of a missing videotape; (3) the jury instructions were inadequate; and (4) the court erred in limiting his cross-examination of a witness. We affirm.

## FACTS

*Testimony of Ann Spengler:* Spengler testified that she attended a party at defendant's residence on November 23, 1996. She was 14 years old at that time. Ultimately, everyone left the party except defendant, Spengler, and Mandy Ramsey (defendant's girlfriend). At defendant's request, Spengler and Ramsey got into his hot tub. He stayed out of the tub and videotaped them as Ramsey fondled Spengler's breasts. He held the video camera with one hand and masturbated with the other. At some point, he told Ramsey to touch Spengler's vagina, but Spengler refused. After 20 to 30 minutes, they

all got into a bed and defendant began having sex with Ramsey. He simultaneously made two attempts to touch Spengler's vagina, but she pushed his hand away both times.

*Testimony of Daryle Bachman, Betty Siedlarz, and David Goodwin:* Bachman and Siedlarz testified that they subsequently viewed a videotape of Spengler and Ramsey naked in a hot tub and fondling each other's breasts. Defendant's voice was audible in the background. Bachman further testified that he returned the tape, with others, to defendant after viewing it. Defendant said he did not want the tapes and told Bachman to "get them out of here." Nevertheless, Bachman left the tapes with him. Goodwin, who was with defendant at the time, confirmed Bachman's account of returning the tapes.

*Testimony of Rosa Contreras:* Contreras testified that she viewed a videotape of defendant, Spengler, and Ramsey naked in a hot tub. At one point, Spengler had her arm around Ramsey's neck. Contreras did not notice any sound on the tape, but she stopped watching after only five minutes.

*Testimony of police officers Troy Burns and Kim Sylvester:* Burns and Sylvester testified that they searched defendant's residence on November 19, 1997, and recovered several videotapes. They delivered the tapes to lab officers without viewing them. Sylvester also spoke with defendant that day. Although defendant never admitted any guilt, he acknowledged sleeping in the same bed with Spengler and Ramsey on the night of the party. To Sylvester's knowledge, the tapes he and Burns recovered from defendant's residence did not contain anything of evidentiary value.

*Testimony of defendant:* Defendant testified that he celebrated his birthday at his residence on November 23, 1996. No one used the hot tub that night. He went to bed with Ramsey when the party broke up at about 2 a.m. Spengler was asleep on the living room couch, and she remained there until the following morning. Defendant denied telling Officer Sylvester that he slept in the same bed with Spengler and Ramsey. He never touched Spengler in a sexual manner or encouraged Ramsey to do so. The only nudity on his videotapes involved his girlfriend "just parading around the house." He never taped Spengler or anyone else engaged in sexual conduct.

The jury found defendant guilty of aggravated criminal sexual abuse (720 ILCS 5/12—16(d) (West 1994)), and he now appeals.

## ANALYSIS

### 1. Reasonable Doubt

First, defendant claims that the State's evidence did not establish his guilt beyond a reasonable doubt. When faced with such a claim, we

view the evidence in a light most favorable to the State and determine whether any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 478 N.E.2d 267 (1985). We do not reassess the witnesses' credibility or reweigh their testimony, since these functions belong to the jury. *People v. Jimerson*, 127 Ill. 2d 12, 535 N.E.2d 889 (1989). A reversal is warranted only if the evidence is so improbable or unsatisfactory that it leaves a reasonable doubt regarding the defendant's guilt. *People v. Flowers*, 306 Ill. App. 3d 259, 714 N.E.2d 577 (1999) (noting that mere conflicts in the evidence are not enough).

■ The offense of aggravated criminal sexual abuse occurs when the accused "commits an act of *** sexual conduct with a victim who was at least 13 years of age but under 17 years of age and the accused was at least 5 years older than the victim." 720 ILCS 5/12—16(d) (West 1994). A conviction is also proper under the accountability theory when a defendant, intending to promote or facilitate the offense, aids and abets another person who actually commits the offense. 720 ILCS 5/5—2(c) (West 1996). "One may aid and abet without actively participating in the overt act." *People v. Taylor*, 164 Ill. 2d 131, 140, 646 N.E.2d 567, 571 (1995). Thus, a defendant is accountable for the acts of another person if they share "a common criminal plan or purpose." *Taylor*, 164 Ill. 2d at 140-41, 646 N.E.2d at 571.

■ Applying these principles to the instant case, we conclude that the State presented sufficient evidence to prove defendant guilty beyond a reasonable doubt. The record shows that Spengler and defendant satisfied the statutory age requirements on the night of defendant's party. According to the State's evidence, defendant requested Spengler and Ramsey (his girlfriend) to get in his hot tub while all three were naked. Ramsey then began fondling Spengler's breasts—an act of sexual conduct. See 720 ILCS 5/12—12(e) (West 1996). Rather than disassociate himself from this conduct, defendant videotaped it while simultaneously masturbating. He also directed Ramsey to fondle Spengler's vagina, although Spengler refused. These facts are sufficient to convince a rational jury that defendant and Ramsey operated under a common criminal purpose to sexually abuse Spengler.

## 2. Testimony About Contents of Videotape

■ Second, defendant claims that the testimony from the State's witnesses about the contents of the videotape was unreliable because the tape was missing and the State did not establish a chain of custody for it. He supports this claim by citing *People v. Pulliam*, 176 Ill. 2d 261, 680 N.E.2d 343 (1997), and *People v. Kabala*, 225 Ill. App. 3d 301,

587 N.E.2d 1210 (1992). However, these cases are inapposite because they involve the requirements of admitting an item into evidence, while the tape in the instant case was never offered as evidence. The State tried to find the tape, but it was gone by the time defendant's residence was searched approximately one year after his party. The State's evidence showed that defendant possessed the tape during that year and wanted to get rid of it. Defendant offers no authority establishing that the requirements of *Pulliam* and *Kabala* govern under these circumstances. Such authority would make it too easy for a defendant to dispose of a key evidentiary item and then use the item's absence to exclude any other evidence about it. We decline to follow this path. Defendant's right to cross-examine the witnesses gave him an opportunity to expose their alleged unreliability to the jury. Considering this opportunity, and the foregoing concern over disposal of evidence, we are convinced that outright exclusion of the witness' testimony is unwarranted.

■ Defendant also claims that the testimony was inadmissible hearsay. "Hearsay evidence is in-court testimony of an out-of-court statement, which is offered to establish the truth of the matter contained in the statement, and the value of which rests on the credibility of someone other than the witness." *In re E.M.*, 262 Ill. App. 3d 302, 309, 634 N.E.2d 395, 400 (1994). Neither party has cited, and we have not found, an Illinois case addressing the issue of whether testimony about conduct observed on a missing videotape is hearsay. The Superior Court of Pennsylvania has addressed this issue and determined that such testimony is not hearsay. *Commonwealth v. Lewis*, 424 Pa. Super. 531, 623 A.2d 355 (1993) (involving testimony regarding contents of a missing videotape from a store security camera). The court reasoned:

> "[T]he alleged 'declaration' is the conduct of Appellant as recorded on the video tape. Since Appellant's actions do not fall within the category of assertive conduct, i.e., conduct which is intended to convey a message, neither the hearsay rule [n]or the hearsay exception of the admission of a party-opponent is applicable." *Lewis*, 424 Pa. Super. at 534, 623 A.2d at 357.

See also *People v. Tharpe-Williams*, 286 Ill. App. 3d 605, 676 N.E.2d 717 (1997) (upholding admission of testimony regarding events observed live on a security video monitor).[1]

We agree with this reasoning and conclude that the conduct the

---

[1]After finding the hearsay rule inapplicable, the courts in *Lewis* and *Tharpe-Williams* explained that the best evidence rule would require production of the tapes rather than testimony about their contents. Although defen-

State's witnesses observed on the tape was not a "statement" for hearsay purposes. We also note that the testimony about defendant's voice appearing on the tape was not hearsay. The witnesses only testified that they recognized defendant's voice in the background; they did not describe any statement he made. This testimony was offered to show that defendant was present, not to establish the truth of an out-of-court statement.

The case of *State v. Plyler*, 275 S.C. 291, 270 S.E.2d 126 (1980), is instructive on this point. In *Plyler*, a witness was talking to the victim on the telephone when the victim set the receiver down to answer a knock at her door. The witness stayed on the line, recognized the defendant's voice at the door, and then heard gunshots. The court held that the hearsay rule did not bar the witness from testifying that she recognized the defendant's voice in the background. In explaining this holding, the court reasoned: "The challenged evidence does not appear to have been offered for the substantive truth of the matter asserted, but rather to place appellant at the scene of the crime." *Plyler*, 275 S.C. at 294, 270 S.E.2d at 127. The hearsay rule is not applicable in the instant case.

■ Defendant also claims that the challenged testimony was irrelevant. This claim is unavailing because, as noted above, the testimony was material to his culpability under accountability principles.

### 3. Jury Instructions

■ Third, defendant claims that the jury instructions were erroneous because they did not clarify the requirements for a finding of guilt under accountability principles. However, in the trial court he failed to object to the State's tendered instructions, offer any of his own instructions, object when the judge instructed the jury, and cite any instructional error in his motion for a new trial. His claim is consequently waived (*People v. Hanes*, 204 Ill. App. 3d 35, 561 N.E.2d 1075 (1990)), and we find no grounds to review it under the plain error doctrine.

### 4. Limited Cross-Examination

■ Finally, defendant claims that the judge erred in restricting his cross-examination of Daryle Bachman. In his initial statement to the police, Bachman denied receiving the videotape from defendant. However, according to the police reports, he admitted that defendant

---

dant does not raise a claim under the best evidence rule, we note that the rule would not require exclusion of the challenged testimony because the tape was not missing through an act of bad faith by the State. See *People v. Klisnick*, 73 Ill. App. 3d 148, 390 N.E.2d 1330 (1979).

gave him the tape after an officer advised that further investigation could lead to his wife discovering an occasion where he almost had sex with Betty Siedlarz at defendant's residence. In light of this information, defendant argues that Bachman lied to avoid personal repercussions with his wife. Defendant's attorney pursued this argument while cross-examining Bachman by asking, "Had you, prior to the time of making the first statement, ever had an affair with a lady named Betty Siedlarz?" The State objected on relevance grounds. The judge sustained the objection, noting that "the line of questioning concerning the affair is not borne out in the police reports."

We note that rulings involving the scope of a witness' testimony on cross-examination are within the trial judge's discretion. *People v. Smith*, 256 Ill. App. 3d 610, 628 N.E.2d 1176 (1994). Decisions concerning the relevance and admissibility of such testimony will not be overturned on appeal absent a clear abuse of discretion. *Smith*, 256 Ill. App. 3d 610, 628 N.E.2d 1176. In the instant case, defendant's attorney attempted to use the police reports as a basis for questioning Bachman about an alleged affair with Siedlarz. However, the reports only indicated that on one occasion Bachman nearly had sex with Siedlarz. Since there was no indication of an actual affair, we cannot say that the judge clearly abused his discretion in sustaining the State's objection.

## CONCLUSION

For the foregoing reasons, the judgment of the Peoria County circuit court is affirmed.

Affirmed.

HOMER and KOEHLER, JJ., concur.